# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01086-SCT

*MICHAEL MALDONADO AND THE HINDS COUNTY BOARD OF SUPERVISORS*

*v.*

*TOMMY KELLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/24/1999 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | H. WESLEY WILLIAMS, III |
| ATTORNEY FOR APPELLEE: | J. ASHLEY OGDEN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 10/05/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/26/2000 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Following a non-jury trial, the Hinds County Circuit Court found Michael Maldonado and the Hinds County Board of Supervisors liable to Tommy Kelly for $23,700 for personal injuries he sustained in a two-vehicle collision as a result of Maldonado's negligent operation of his patrol car while on duty as a Hinds County Deputy Sheriff. From this judgment, Maldonado and the County (sometimes collectively referred to as "Maldonado") appeal.

## FACTS

¶2. On April 3, 1997, Officer Michael Maldonado ( "Maldonado"), a deputy sheriff with the Hinds County Sheriff's Department, was driving his patrol car to the service shop for regular maintenance. He was accompanied by deputy Wes Snyder. Driving from the west on Court Street, Maldonado approached the intersection of Court and Clinton Streets in Raymond, Mississippi. The intersection had stop signs only for vehicles on Court Street crossing Clinton Street. Maldonado stated that he was aware that this was a very dangerous intersection.

¶3. Maldonado came to a complete stop upon reaching the intersection. He looked to his right and then to his left for oncoming traffic; seeing none, he proceeded through the intersection. A collision occurred as the plaintiff, Tommy Kelly (hereinafter "Kelly"), traveled through the intersection heading north on Clinton Street and Maldonado entered traveling east on Court Street. Maldonado did not see Kelly's vehicle until

immediately prior to impact because of a water tower on Maldonado's right that partially blocked his view of any traffic approaching from the south. Kelly testified that the distance between the water tower and the intersection is approximately fifty (50) yards. There is no indication in the record or testimony that Kelly was speeding at the time of the accident. The parties have agreed that the Hinds County Sheriff's Department is covered by a policy of liability insurance.

## STANDARD OF REVIEW

¶4. The standard of review for a judgment entered following a bench trial is well settled. "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor," and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence. *City of Jackson v. Perry*, 764 So.2d 373, 376 (Miss. 2000) (citing *Puckett v. Stuckey*, 633 So.2d 978, 982 (Miss. 1993); *Sweet Home Water & Sewer Ass'n v. Lexington Estates, Ltd.*, 613 So.2d 864, 872 (Miss. 1993); *Allied Steel Corp. v. Cooper*, 607 So.2d 113,119 (Miss. 1992)). This Court reviews errors of law, which include the proper application of the Mississippi Tort Claims Act, de novo. *Perry*, 764 So.2d at 376 (citing *Cooper v. Crabb*, 587 So.2d 236, 239 (Miss. 1991)).

## ANALYSIS

### WHETHER THE ACTIONS TAKEN BY MALDONADO CONSTITUTED PRECAUTIONS SUFFICIENT TO CLASSIFY HIS CONDUCT AS MERE NEGLIGENCE RATHER THAN ACTS OF RECKLESS DISREGARD FOR THE HEALTH AND SAFETY OF OTHERS UNDER THE MISSISSIPPI TORT CLAIMS ACT § 11-46-1.

¶5. Miss. Code Ann. § 11-46-17(4) (Supp. 2000) provides:

> Any governmental entity of the state may purchase liability insurance to cover claims in excess of the amounts provided for in Section 11-46-15 and may be sued by anyone in excess of the amounts provided for in Section 11-46-15 to the extent of such excess insurance carried; provided, however, that the immunity from suit above the amounts provided for in Section 11-46-15 shall be waived only to the extent of such excess liability insurance carried.

"This provision does not limit the exclusions or exemptions enumerated in Section 11-46-9." *Leslie v. City of Biloxi*, 758 So.2d 430, 434 (Miss. 2000) (quoting *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So.2d 1136, 1144 (Miss. 1999)). This Court has held that:

> [t]he purchase of insurance does not affect potential defenses under Miss. Code Ann. § 11-46-9. Otherwise, sovereigns would be unlikely to continue to purchase insurance if it had the effect of waiving all of their defenses under the MTCA - an undesirable and unintended result in the Court's view.

*Leslie*, 758 So.2d at 434 (quoting *L.W.*, 754 So.2d at 1144). Therefore, the fact that the Hinds County Sheriff's Department is covered by liability insurance does not affect the defenses available to the sheriff's department, the County, or to Maldonado under Miss. Code Ann. § 11-46-9 (Supp. 2000).

¶6. Maldonado argues that he was not liable for Kelly's injuries since he was employed by the Hinds County Sheriff's Department and was driving a patrol car at the time of the collision. Maldonado asserts

that he was acting within the scope of his employment, and therefore, is exempted from liability by the Mississippi Tort Claims Act § 11-46-9(1). One of the enumerated exemptions, § 11-46-9(1)(c) provides governmental entitles and their employees immunity for acts within the employee's course and scope of employment:

> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury....

The purpose of Miss. Code Ann. § 11-46-9 is to "protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim." *Perry*, 764 So.2d at 379. Police officers and fire fighters are more likely to be exposed to dangerous situations and to liability, and therefore, public policy requires that they not be liable for mere negligence. Entities engaged in police and fire protection activities will be liable for reckless acts only. *Maye v. Pearl River County*, 758 So.2d 391 (Miss. 1999); *Turner v. City of Ruleville*, 735 So.2d 226 (Miss. 1999). Applying the facts to the statute, the lower court held that,

> The court finds that Maldonado's conduct, exhibited a reckless disregard for Kelly's safely [sic] and well being. The evidence is clear that Kelly had the right-of-way on the day of the accident. It is equally clear, that Maldonado proceeded past the stop sign and into the intersection of Clinton and Court Streets when it was not safe to do so. Maldonado's negligence admittedly caused the accident which injured Kelly. Consequently, the shield of absolute immunity is not available to Defendants and they are liable to Kelly for damages for the injuries he sustained as the result of the collision.

¶7. Maldonado asserts that the trial judge erred in failing to apply the proper standard of care. He noted that although the judge begins by stating Maldonado "exhibited a reckless disregard for Kelly's safely [sic] and well being....," the judge also stated that it was "Maldonado's negligence" that caused the accident. Maldonado argues that the judge appears to be applying two different standards of care. He asserts that, under the statute, the proper standard of care should be whether his actions constituted a "reckless disregard" for the safety and well-being of law-abiding citizens.

¶8. Since "reckless disregard" is not defined by statute, Maldonado directs this Court's attention to the various sources we have used in the past to define recklessness. This Court examined this issue in *Turner v. City of Ruleville*, and the Court looked to *Black's Law Dictionary* for guidance as to the proper definition:

> 'Reckless disregard of the rights of others' is defined

> [a]s used in automobile guest law, means the voluntary doing by motorist of an improper or wrongful act, or with knowledge of existing conditions, the voluntary refraining from doing a proper or prudent act when such an act or failure to act evinces an entire abandonment of any care, and heedless indifference to results which may follow and the reckless taking of chance of accident happening without intent that any occur....

735 So.2d 226, 228-29 (Miss. 1999) (quoting *Black's Law Dictionary* 1270 (6th ed. 1991)) . Additionally, this issue was also revisited in *Maye v. Pearl River County*, where we cited a definition of recklessness given by the Fifth Circuit:

> The terms 'willful,' 'wanton,' and 'reckless' have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. *These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended.* The usual meaning assigned to do [sic] terms is that the actor has intentionally done an *act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow*. It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.

758 So.2d 391, 394 (Miss. 1999)(quoting *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 224 n.3 (5th Cir. 1991) (emphasis in original)). Additionally, this Court has held that 'wantonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." *Turner*, 735 So.2d at 229 (citing *Beta Beta Chapter v. May*, 611 So.2d 889, 895 (Miss. 1992) (quoting *Covington v. Carley*, 197 Miss. 535, 541-42, 19 So.2d 817, 818 (1944)).

¶9. In *Maye*, an officer was backing his vehicle up an incline, which was also the entrance of a parking lot. *Maye v. Pearl River County*, 758 So. 2d 391, 392 (Miss. 1999). The officer collided with a vehicle which had turned off the road onto the incline. *Id.* The officer testified that he could not see the road from the parking lot because the jail sat below the level of the road. He checked his rear view mirrors before backing up the incline. *Id.* We held that the officer "showed a conscious disregard for the safety of others when he backed up the incline entrance to the parking lot knowing he could not be sure the area was clear."*Id.* at 395. Similarly, in *Turner*, this Court found an officer's alleged actions to constitute reckless disregard when an officer, who had pulled over a visibly intoxicated person, allowed the driver to continue driving. 735 So. 2d at 227. The intoxicated driver later was involved in a traffic accident. *Id.* It is important to note, however, that *Turner* reversed a Miss. R. Civ. P. 12(b)(6) dismissal by the trial court. *Id.* Accordingly, all facts discussed in the case are allegations made in the plaintiff's complaint and were not put before a factfinder.

¶10. In the recent case of *City of Jackson v. Perry*, an officer driving his police vehicle collided with a car while going to meet fellow officers for dinner. 764 So.2d at 373. The officer testified "he would customarily drive without knowing how fast he was going" and was speeding at the time the accident occurred. *Id.* We found that the officer acted with reckless disregard for the safety of others because he was speeding without purpose and failed to use any lights or sirens.

¶11. The facts of *Maye*, *Turner*, and *Perry* are distinguishable from the case at hand. In *Maye*, the officer failed to simply turn around and look behind him. Furthermore, the officer backed up an incline knowing that any traffic turning into the parking lot would not be able to see him in time to stop. Likewise, in *Turner*, the officer pulled over the drunk driver because he had observed him driving in an erratic fashion. The officer then allowed the driver, who he knew to be intoxicated and incapable of driving in a prudent and safe manner, to get back in his car and drive away. In *Perry*, the officer was driving at an excessive rate of speed without light or sirens so he would not be late for dinner with his fellow officers. The common

denominator in these cases is that the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved.

¶12. The present case, however, is unlike *Maye*, *Turner*, or *Perry*. Officer Maldonado was driving his patrol car when he came to a two-way stop. Officer Maldonado stopped, looked both ways, saw nothing, proceeded into the intersection, and collided with Kelly. There is no indication that Maldonado acted with deliberate disregard to the consequences of attempting to cross the intersection. To the contrary, there is every indication that Maldonado was aware of the nature of the intersection and took specific steps to avoid the collision. Both parties agree that this was "an extremely dangerous intersection" because a water tower partially blocked Officer Maldonado's view of traffic approaching from the south. Although Officer Maldonado may have been negligent, his actions do not rise to the level of reckless disregard. "Wantonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." *Turner*, 735 So. 2d at 229. In the present situation, Officer Maldonado exercised due care and obeyed the traffic laws. Simply put, Officer Maldonado did what any ordinary person in his situation would have done. He stopped, looked, and then proceeded. The only other alternative he had was for him to put his car in park, exit the vehicle, walk out into the intersection, look both ways, return to his vehicle, and simply hope that no other car came along during the time it took him to get back in his car and proceed.

## CONCLUSION

¶13. The trial court erred as a matter of law in finding Officer Maldonado acted with reckless disregard for the safety and well being of Tommy Kelly. Maldonado approached a dangerous intersection, stopped, looked, and then proceeded. This conduct simply does not rise to the level of reckless disregard under the analysis set forth in *Maye*, *Turner*, and *Perry*. Accordingly, Maldonado and Hinds County are entitled to immunity under the Mississippi Tort Claims Act pursuant to § 11-46-9(1)(c). The judgment of the Hinds County Circuit Court is reversed, and judgment is rendered here in favor of Michael Maldonado and the Hinds County Board of Supervisors that Tommy Kelly take nothing in this action and that his complaint and this action are finally dismissed with prejudice.

¶14. **REVERSED AND RENDERED.**

**PRATHER, C.J., PITTMAN, P.J., SMITH AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, P.J., AND DIAZ, J. WALLER, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶15. Officer Michael Maldonado's conduct while driving through the intersection goes beyond the level of "mere negligence" to that of "reckless disregard," and therefore, his actions should not be protected by the Mississippi Tort Claims Act.

¶16. In *Maye v. Pearl River County*, 758 So. 2d 391, 394 (Miss. 1999), this Court cited a definition of recklessness as given by the Fifth Circuit:

The terms 'willful,' 'wanton,' and 'reckless' have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. *These terms apply to conduct which is still merely negligent, rather than actually intended to*

*do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended.* The usual meaning assigned to do [sic] the terms is that the actor has intentionally done an *act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.* It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.

(quoting ***Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.***, 922 F.2d 220, 224 n.3 (5th Cir. 1991) (emphasis in original).

¶17. Reckless disregard is not an entirely separate level of behavior, but it is included in the levels or degrees of negligence.

¶18. The majority cites to two Mississippi cases as illustrations of reckless disregard and attempts to distinguish them from the facts of the instant case. These two cases are factually similar to the current facts, reinforcing the fact that Maldonado's conduct rises to the level of reckless disregard as opposed to that of only mere negligence.

¶19. The facts of the *Maye* case illustrate the recklessness standard for MTCA. In *Maye*, a deputy sheriff backed up an inclined driveway of a parking lot with full knowledge that this driveway was used as an entranceway for persons coming into the parking lot. Even though the officer checked his rear view mirrors before backing, he admits that he could not see the road behind him because the parking lot and the jail sat below the level of the road. *Maye*, 758 So. 2d at 392. While the officer was backing up the downward-sloping entranceway, the plaintiff was entering the parking lot and traveling down the incline. The plaintiff saw the officer approaching, stopped her car, left her foot on the brake, and blew the horn continuously. Still, the officer continued to back up the incline and ultimately struck her vehicle. When the officer argued he did not act with a "conscious indifference to the consequences of his actions," the Court held the officer liable and stated that:

> Collier (the officer) did not carelessly back out of the space. With conscious indifference to the consequences, **he backed out knowing he could not see what was behind him. This Court has held wantonness is a failure or refusal to exercise any care,** while negligence is a failure to exercise due care.

*Id.* at 395 (citing *Turner v. City of Ruleville*, 735 So. 2d 226, 229 (Miss. 1999) (citing ***Beta Beta Chapter v. May***, 611 So. 2d 889, 895 (Miss. 1992) (quoting ***Covington v. Carley***, 197 Miss. 535, 541-42, 19 So. 2d 817, 818 (1944)). Therefore, the officer's conduct in *Maye* did rise to the level of "conscious indifference." This standard of conscious indifference was used to define the term "reckless disregard." *Id.* at 394 (citing ***Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.***, 992 F.2d 220, 224 n.3 (5th Cir. 1991) (quoting ***Cates v. Beauregard Elec. Coop., Inc.***, 316 So. 2d 907, 916 (La. Ct. App. 1975)). The officer in *Maye* met this standard and so did Officer Maldonado in the present case.

¶20. Although the majority attempts to distinguish the facts of *Maye* from the present case, it is a factually similar case involving a traffic accident between a police officer and a private citizen. In *Maye*, the officer was backing out of the parking lot of a jail. Despite the fact that the officer knew the incline was also used as an entrance to the parking lot and that his view was blocked, he backed up the incline that was used as an entranceway. What happened in *Maye* is quite similar to the facts of the present case. Officer

Maldonado was the one who determined if intersections were dangerous. He was the safety officer and had full knowledge that this was a dangerous intersection, and he testified that he knew that the intersection was "extremely dangerous." Maldonado also stated that his view to the right was significantly blocked by the water tower. In addition, Maldonado testified that he was driving a one-man cruiser that day and that he had a passenger on his right, blocking his view even further. After admitting knowledge of all the information above, the officer looked to his right, then to his left, and then proceeded into the intersection. **Maldonado never glanced again to his right,** to recheck the position of oncoming traffic, before proceeding through the intersection.

¶21. The conduct of Officer Maldonado rises at least to the degree of negligence exhibited by the officer in *Maye*, if not to a higher standard of negligence. For example, Officer Maldonado had a perfectly good opportunity to look again to his right, the side of the oncoming traffic, before proceeding through the intersection. In *Maye*, the officer's view behind him was more substantially blocked than the view of the officer in the present case. Maldonado simply had to recheck his right side and proceed with caution. The officer in the *Maye* case was held to have acted with reckless disregard for his actions. Because Officer Maldonado had a better opportunity to prevent his negligence than the officer in *Maye* and he did not, Officer Maldonado should also be held to this higher standard of negligence, acting in reckless disregard.

¶22. Because Maldonado failed to secure a clear view to his right before entering the intersection, Maldonado acted in reckless disregard of Kelly and of any other motorists proceeding North on Clinton Street. Additionally, it is a mystery why Maldonado and the County would cite to the above definitions of recklessness for support. This Court made it clear in both *Maye* and *Turner* that proceeding forward in spite of a "knowledge" or an "awareness" of the potential or probable danger is the equivalent of recklessness. Maldonado testified that he knew that his vision was substantially blocked to the right, the direction from which Kelly approached. Not only was this a failure to exercise "due care," but this, in effect, amounts to a failure to exercise any care at all. **Performing a precautionary task that one knows to be futile, is the same as taking no precautions at all.**

¶23. The majority also attempts to distinguish the facts of *City of Jackson v. Perry*, 764 So. 2d 373 (Miss. 2000), from the facts of the present case. However, the facts of *Perry* are also similar to the present facts. In *Perry*, the officer was speeding, using sirens and lights, when he collided with the plaintiff. The officer was not responding to an emergency call, but was instead late for dinner with other officers. *Id.* at 375. Here, Officer Maldonado was driving his patrol car in to the service station for maintenance.

¶24. Although there are certain situations where officers of the law may be protected from liability during the course of their duties, this is not one of them. An officer should be held to a higher standard of care when he has full knowledge of the nature and characteristics of local intersections, the direction of oncoming traffic, and who has the right of way in certain intersections. As in the present case, Maldonado was not responding to an emergency call, but was taking his patrol car in for maintenance and service when he hit Kelly's car. Neither officer in these cases was responding to an emergency situation or even a request for assistance. Instead, this officer was acting recklessly in pursuit of a routine matter, and the Board of Supervisors should be held accountable for Maldonado's recklessness.

¶25. The trial judge did not err in finding Officer Maldonado acted recklessly. Maldonado's knowledge that the intersection was "extremely dangerous" and his failure to take precautions clearly illustrate that his actions constituted a "reckless disregard for the safety and well-being of others" under both case-law and

Section 11-46-9(1)(c). *City of Jackson v. Perry*, 764 So. 2d 373 (Miss. 2000); *Maye v. Pearl River County*, 758 So. 2d 391 (Miss.1999); *Turner v. City of Ruleville*, 735 So.2d 226 (Miss. 1999). The judgment of the trial court in the amount of $23,700 with all costs should, therefore, be affirmed.

¶26. Officer Maldonado acted in reckless disregard for the safety of Kelly, who had the right of way at a dangerous intersection. The reckless behavior of the officer is not the type that should be protected under the Mississippi Tort Claims Act. I would affirm the judgment against the Board of Supervisors and the judgment to be paid by its liability carrier. Accordingly, I dissent.

**BANKS, P.J., AND DIAZ, J., JOIN THIS OPINION.**