846 So.2d 1031 (2003)
Freddie Lee JOHNSON, Individually and on Behalf of the Heirs at Law and Wrongful Death Beneficiaries of Tommie Lee Johnson, Jr., Deceased
v.
CITY OF CLEVELAND.
No. 2001-CA-01687-SCT.
Supreme Court of Mississippi.
May 29, 2003.
*1032 Ellis Turnage, Cleveland, attorney for appellants.
Gerald H. Jacks, Cleveland, attorney for appellee.
EN BANC.
CARLSON, J., for the Court.
¶ 1. Aggrieved by the circuit court's grant of summary judgment in favor of the City of Cleveland, Freddie Lee Johnson, individually and on behalf of the wrongful death beneficiaries of Tommie Lee Johnson, Jr., has appealed to this Court on the issue of whether there was sufficient evidence to create genuine issues of material fact as to whether the officer acted with reckless disregard for the safety and well-being of any person not engaged in criminal activity as defined by Miss.Code Ann. § 11-46-9(1)(c) (Rev.2002). Finding that the circuit court erred in granting the City's motion for summary judgment in the face of conflicting evidence about the actions of the officer, we reverse the judgment of the Circuit Court of the Second Judicial District of Bolivar County and *1033 remand this case for a bench trial on all issues.

FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 2. On March 5, 1997, between one and two o'clock in the morning, Officer Charles White with the Cleveland Police Department observed a black truck moving erratically near the intersection of Chrisman Avenue and White Street in Cleveland, Mississippi. After the driver of the truck refused to stop, Officer White requested back-up. A chase ensued and eventually headed south on Chrisman Avenue, west on Carver Street and then north on Church Street. The driver of the truck drove the truck into a driveway at 1322 Church Street, exited the truck while the truck was still running and ran alongside the truck, pushing the truck by the driver's side door. As Officer White approached the vehicle, he could see the driver's feet underneath the truck. Officer White commanded the driver of the truck to stop, but once Officer White reached the truck, the driver had already fled the scene. While Officer White waited for backup to arrive, he searched the area around the truck for the driver. Approximately one minute and a half after the driver of the truck had fled, Officer White heard a noise which sounded like tires squealing on Chrisman Avenue, the next street east of his location. Officer White then heard Officer Danny Oswalt call for an ambulance.
¶ 3. The noise heard by Officer White was the result of a collision between the vehicle driven by Officer Oswalt and a pedestrian, Tommie Lee Johnson, Jr. (Johnson). Officer Oswalt was at the intersection of Highway 8 and Chrisman Avenue when he received Officer White's request for backup. In his deposition Officer Oswalt stated that in response to the call, he traveled south on Chrisman Avenue, immediately activating his blue lights. However, he did not use his siren, but he engaged his airhorn every ten to fifteen feet. Officer Oswalt maintained a speed of 45 to 50 miles per hour, and he slowed down as he approached intersections. The posted speed limit was 30 miles per hour. As he approached the intersection of Carver Street and Chrisman Avenue, Officer Oswalt could not see Officer White's blue lights; therefore, he assumed Officer White had turned on Carver Street. As Officer Oswalt was approaching the intersection of Chrisman Avenue and Carver Street, he saw someone run out in front of him from the direction of Church Street. He applied his brakes and attempted to swerve, but he hit the pedestrian. After striking Johnson, Officer Oswalt immediately called for an ambulance.
¶ 4. On March 5, 1997, at approximately 1:30 a.m., Kevin Quantrell Young was standing in front of Nell's Barber Shop at 1415 South Chrisman Avenue in Cleveland. In his deposition, Young stated that he saw Johnson walk by the barber shop at 1:40 a.m. headed north on the east side of Chrisman Avenue. After Johnson walked by, Young noticed a Cleveland Police Department patrol car with its blue lights on traveling south on Chrisman Avenue. He noticed that the patrol car was trying to stop a black truck. Young noticed another Cleveland Police Department patrol car traveling south on Chrisman Avenue. However, Young stated the second patrol car did not have its blue lights activated and the car was traveling at least 60 miles per hour. As the patrol car was preparing to turn right onto Carver Street, the car "veered wide to the left" and Young heard a loud noise. When Young arrived at the scene, he noticed that Johnson had been hit by the second patrol car. Young also stated that Johnson was not the driver of *1034 the black truck being pursued by the first Cleveland Police Department patrol car because only a few minutes had elapsed between the time he saw Johnson walk in front of the barber shop to the time he saw Johnson lying on Chrisman Avenue. Young provided a statement to Officer Charles Bingham on March 6, 1997.
¶ 5. Officer Bingham, a criminal investigator with the Cleveland Police Department, received a call between 1:45 and 2:00 a.m. to investigate the accident. Officer Bingham observed that the driveway where the truck came to rest was muddy, and he also observed footprints in the mud which led away from the truck. Officer Bingham noted Johnson's shoes were also muddy. However, an examination of the evidence collected by Officer Bingham did not produce sufficient evidence to link Johnson to the stolen black truck. Upon Officer Bingham's arrival at the accident scene, Johnson was transported to the Bolivar County Medical Center. Officer Bingham interviewed Officer White and Officer Oswalt and took statements from Cedric James, Cliff Williams, Shawn Mayhall, Kevin Young and Robert Mitchell. After the accident, blood was drawn from Johnson and sent to the Mississippi Crime Lab where it was determined that Johnson's blood tested positive for .10% ethyl alcohol.
¶ 6. Shawn Mayhall was standing in front of his aunt's house when he observed Officer White's pursuit of the black truck. Mayhall remembered seeing the truck earlier in the night because the driver jumped out of the truck and asked him a question. Mayhall first stated that when he saw the second patrol car pass by, the car was speeding, the blue lights were on, but the siren was not. However, only a few questions later, Mayhall stated he did not remember the second car having its blue lights flashing. He remembered the first car, Officer White's car, with its blue lights activated; however, Mayhall stated the second patrol car which was driven by Officer Oswalt did not have its blue lights activated.
¶ 7. As a result of his injuries suffered from the accident, Tommie Lee Johnson, Jr., died on April 14, 1997. On April 16, 1997, Dr. Steven Hayne performed a post-mortem examination on Johnson's body. Dr. Hayne noted that the immediate cause of death was aspiration of gastric contents resulting from the accident involving the City's patrol car.
¶ 8. On May 26, 1998, Freddie Lee Johnson filed this wrongful death action in the Circuit Court of Bolivar County, Mississippi, Second Judicial District, against the City of Cleveland. On August 24, 2001, the City filed its motion for summary judgment asserting that Freddie Lee Johnson had "no proof that Officer Oswalt, at the time of the accident, was acting in reckless disregard for the safety and well-being of Johnson." After reviewing the evidence in the light most favorable to the plaintiffs, the circuit court granted summary judgment in favor of the City finding Officer Oswalt, "who was responding to a call, did not act with reckless disregard as defined by Miss.Code Ann. § 11-46-7(1)[sic]."[1]

DISCUSSION
¶ 9. In order for a summary judgment motion to be properly granted, no genuine issue of material fact may exist, and the moving party must be entitled to judgment as a matter of law. Miss. R. Civ. P. 56(c). This Court reviews a trial court's grant of a motion for summary judgment de novo. Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63 (Miss.1988). The burden of proving that *1035 no genuine issue of material fact exists rests upon the party requesting the summary judgment. Id. at 63-64. The trial court must carefully review all evidentiary matters before it; admissions in pleadings, answers to interrogatories, depositions, affidavits, etc., in the light most favorable to the party against whom the motion for summary judgment is made. McFadden v. State, 542 So.2d 871, 874 (Miss.1989). See also Hancock v. Mid Am. Ins. Servs. Inc., 836 So.2d 762, 764-65 (Miss.2003).
When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of his pleadings, his response must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed.
Miller v. Meeks, 762 So.2d 302, 304 (Miss. 2000) (citing Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983)).
¶ 10. Here, the evidence before the trial court on the City's motion for summary judgment consisted of the depositions of Officer Charles White, Officer Danny Oswalt, Investigator Charles A. Bingham and Shawn Mayhall; the affidavit of Kevin Young; the investigative file of the Cleveland Police Department; the autopsy report prepared by Dr. Steven Hayne and the FBI Crime Lab report.
¶ 11. Officer Danny Oswalt, the officer responding to Officer White's request for backup, testified under oath in his deposition that he activated his blue lights as he turned off of Highway 8 and onto Chrisman Avenue. He stated he kept his blue lights on the entire time. When asked about his speed, Officer Oswalt stated he was driving approximately 45-50 miles per hour, but he would slow down at all intersections. Every 10 to 15 feet, Officer Oswalt used an air horn to alert traffic instead of activating his siren. As he was slowing down to turn onto Carver Street, Officer Oswalt saw someone running from his right. He slammed on the brakes and tried to swerve, but Officer Oswalt collided with the person. Although he stated the person came from his right, the left side of his patrol car received the most damage.
¶ 12. Officer Charles White, the officer in pursuit of the black truck, stated in his deposition that he did not notice Officer Oswalt's blue lights as Officer Oswalt passed by the scene. Shawn Mayhall, a bystander who was standing on Chrisman Avenue at the time of the accident, was also deposed. He first stated that Officer Oswalt was speeding, but his blue lights were flashing. When Mayhall was asked again only moments later about the second police car that passed by him, he stated that he remembered one car having blue lights flashing, but he felt sure it was the first car, Officer White's patrol car. Mayhall again stated that he remembered the second police car speeding down Chrisman Avenue, but he did not remember the blue lights being activated. Kevin Young gave a sworn statement in which he stated that Officer Oswalt's patrol car, the second police car he saw on the night of the accident, was traveling at least 60 miles per hour without the blue lights flashing.
¶ 13. Based upon all of the evidence submitted on the motion for summary judgment, the trial court found that the officer who responded to the backup call did not act with reckless disregard pursuant to the Mississippi Tort Claims Act. Therefore, the City's motion for summary judgment was granted.
*1036 ¶ 14. Since Brown v. Credit Center, Inc., 444 So.2d 358 (Miss.1983), where we for the first time discussed our summary judgment procedure pursuant to Miss. R. Civ. P. 56, the cases are legion which hold that summary judgment is inappropriate if there is a genuine issue of material fact in accordance with Miss. R. Civ. P. 56(c). Today's case falls into that category. "[S]ummary judgment is inappropriate where there are undisputed facts which are susceptible to more than one interpretation." Canizaro v. Mobile Comms. Corp. of Am., 655 So.2d 25, 28 (Miss.1995). "And should it determine that the undisputed facts can support more than one interpretation, the Court will not hesitate to reverse and remand for a trial on the merits." Id. at 28-29.
¶ 15. Here, critical factual disputes preclude summary judgment in this case. Officer Danny Oswalt made conclusory statements during his deposition to the effect that his blue lights were activated. However, conflicting testimony clearly disputes Officer Oswalt's testimony. This conflicting testimony created a material factual dispute that must be resolved by the trier of fact, but only after a full evidentiary hearing by way of a bench trial. On remand a non-jury (bench) trial will be conducted by the trial judge pursuant to Miss.Code Ann. § 11-46-13(1). However, at a bench trial, as opposed to deposition testimony, affidavits, files and reports, there will likely be witnesses subject to extensive examination and cross-examination, and the learned trial judge, as the trier of fact, will then have the benefit of more than the cold words on paper via deposition testimony, affidavits, investigative files and reports. The trial judge will instead have the opportunity of not only hearing the sworn testimony of the witnesses but also observing their demeanor. See Culbreath v. Johnson, 427 So.2d 705, 708 (Miss.1983). Of course, we do not intimate any view as to the proper decision on remand after the bench trial. Such decision is left to the sound discretion of the trial judge upon a plenary trial.

CONCLUSION
¶ 16. It is for these reasons that we reverse the circuit court's order granting summary judgment in favor of the City and remand this case for a bench trial consistent with this opinion.
¶ 17. REVERSED AND REMANDED.
PITTMAN, C.J., SMITH, P.J., WALLER, COBB, DIAZ AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
McRAE, P.J., concurring in result only:
¶ 18. While I concur with the result reached by the majority which finds summary judgment inappropriate under the circumstances, I disagree with its rationale. Summary judgment was inappropriate because the limited facts presented would permit a finding that the officer acted in reckless disregard for the safety and well-being of others by traveling at an excessive speed with no siren in a residential neighborhood. For this reason, I concur in result only.
¶ 19. It is well-established law that immunity under the Mississippi Tort Claims Act will not be afforded if "the employee acted in reckless disregard of the safety, and well-being of any person not engaged in criminal activity at the time of injury." Miss.Code Ann. § 11-46-9(1)(c). Reckless disregard has been defined to "embrace willful and wanton conduct which requires knowingly and intentionally doing a thing *1037 or wrongful act." Turner v. City of Ruleville, 735 So.2d 226, 229-30 (Miss.1999) (citing Raney v. Jennings, 248 Miss. 140, 147, 158 So.2d 715, 718 (1963)). Factors which support a finding of reckless disregard in connection with police pursuits include: (1) the length of the chase; (2) type of neighborhood; (3) characteristics of the streets; (4) the presence of vehicular or pedestrian traffic; (5) weather conditions and visibility; (6) the seriousness of the offense for which the police are pursuing the suspect; (7) whether the officer proceeded with sirens and blue lights; (8) whether the officer had available alternatives which would lead to the apprehension of the suspect besides pursuit; (9) the existence of police policy which prohibits pursuit under the circumstances; and (10) the rate of speed of the officer in comparison to the posted speed limit. City of Jackson v. Brister, 838 So.2d 274, 279-80 (Miss.2003); City of Jackson v. Lipsey, 834 So.2d 687, 692-93 (Miss.2003); City of Jackson v. Perry, 764 So.2d 373, 377 (Miss. 2000); Maye v. Pearl River County, 758 So.2d 391, 395 (Miss.1999). See also District of Columbia v. Hawkins, 782 A.2d 293 (D.C.Ct.App.2001).
¶ 20. Applying these factors to the facts presented, a reasonable fact finder could conclude that the "reckless disregard" exception to Miss.Code Ann. § 11-46-9(1)(c) applies. At least six of the ten factors enumerated above are present. The police pursuit was in a residential neighborhood on the South East side of Cleveland near a four-lane highway. The streets in the neighborhood are narrow and numerous. Even at two o'clock in the morning, traffic near the area was still present since the four-lane highway which enters Cleveland is only a few feet away. Additionally, pedestrians were present as evidenced by the fact that Johnson, the victim of the pursuit, was a pedestrian crossing an intersection. The pursuit was initiated only by an officer's report of erratic driving. There were no claims that the suspect had committed any "criminal" acts other than a simple traffic violation. Additionally, the officer who precipitated the accident causing Johnson's death was not even the officer who initiated the pursuit but a backup officer. As an alternative to pursuit, the officers could have identified the license plate of the vehicle since at the time of the accident the suspect had fled the vehicle on foot. The officer involved in the accident did not have on his siren, and it is disputed as to whether he activated his blue lights. Finally, the officer was driving 45 to 50 miles per hour in a 30 mile per hour zone, exceeding the speed limit at least by 15 miles per hour in the pursuit of a suspect who was fleeing on foot. These facts taken as a whole certainly would permit a finding that the officer acted in "reckless disregard of the safety, and well-being of any person not engaged in criminal activity at the time of injury." Miss. Code Ann. § 11-46-9(1)(c). I would find that based on the facts presented, summary judgment was inappropriate since the plaintiffs offered sufficient evidence to permit a finding that the "reckless disregard" exception to immunity under Miss. Code Ann. § 11-46-9(1)(c) applies.
¶ 21. For this reason, I concur in the result reached by the majority, but write separately to explain the reasons I find the trial court's grant of summary judgment to be reversible error.
EASLEY, J., dissenting:
¶ 22. After review of the record in this case, I must dissent. I find that the trial court did not err in granting the City's motion for summary judgment. For this reason, I believe that the trial court ruling should be affirmed.
*1038 ¶ 23. The Mississippi Tort Claims Act (MTCA), Miss.Code Ann. §§ 11-46-1 to -23 (Rev.2002), provides immunity to government entities and employees who act within the course and scope of employment duties. Section 11-46-9(1)(c) provides in pertinent part:
A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
...
(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury....
Miss.Code Ann. § 11-46-9(1)(c) (Rev.2002) (emphasis added). In addition, section 11-46-7(2) addresses the Act's coverage when an employee is sued as follows:
An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.
Miss Code Ann. § 11-46-7(2) (emphasis added).
¶ 24. This Court has stated that "[a]pparent in the language [of Miss.Code Ann. § 11-46-9] is that those officers who act within the course and scope of their employment, while engaged in the performance of duties relating to police protection, without reckless disregard for the safety and well being of others, will be entitled to immunity." McGrath v. City of Gautier, 794 So.2d 983, 985 (Miss.2001). Indeed, "[t]he purpose of Miss.Code Ann. § 11-46-9 is to `protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim.'" Maldonado v. Kelly, 768 So.2d 906, 909 (Miss.2000) (quoting City of Jackson v. Perry, 764 So.2d 373, 376 (Miss.2000)).
¶ 25. In granting the City's motion for summary judgment, the trial judge in the case sub judice held that:
[This] [c]ourt after having reviewed the pleadings and supporting briefs and having viewed the evidence in the light most favorable to the [p]laintiffs, finds that the officer involved herein, who was responding to a call, did not act with reckless disregard as defined by Miss.Code Ann. § 11-46-7(1). As such, this [c]ourt grants the [d]efendant's [m]otion for [s]ummary [j]udgment.
¶ 26. The City contends that Officer Oswalt's actions did not constitute reckless disregard. Officer Oswalt was responding to a call for back-up assistance running his blue lights and sounding his air horn. In considering the City's motion for summary judgment and Johnson's response thereto, the trial court had before it the following documents: (1) Officer White's deposition; (2) Officer Oswalt's deposition; (3) Officer Bingham's deposition; (4) Mayhall's deposition; (5) Mayhall's statement to Bingham; (6) the Mississippi Crime Laboratory Reports; (7) *1039 Young's affidavit; (8) investigative reports and forms; (9) Dr. Hayne's post-mortem examination report and (10) the FBI Laboratory Report.
¶ 27. Johnson, however, argues that Officer Oswalt's actions amounted to reckless disregard. Johnson claims that the documents submitted to the trial court created a genuine issue of material fact as to whether Officer Oswalt's conduct demonstrated a reckless disregard for Johnson's safety and well-being. Johnson asserts that there remain fourteen disputed issues of fact which preclude summary judgment.
¶ 28. The fourteen disputed issues on appeal fall into two categories: (1) whether Johnson was the driver of the truck being pursued by the Cleveland Police Department who ultimately fled from Officer White on foot or whether Johnson was merely a pedestrian who was not engaged in criminal activity at the time that he was struck; and (2) whether Officer Oswalt, while in response to an emergency call, was speeding and traveling without activating his blue lights and siren, when he struck Johnson. Specifically Johnson's fourteen disputed issues of fact are as follows: (1) whether Johnson was the driver of the truck pursued by Officer White; (2) whether Johnson was the person who fled from the abandoned truck and ran on foot in front of Officer Oswalt's patrol car; (3) whether Johnson was walking north along the east side of Chrisman Avenue when he was struck by Officer Oswalt's patrol car; (4) what were Johnson's actions and conduct prior to and at the time he was struck by Officer Oswalt; (5) whether Johnson darted out from Officer Oswalt's right, running from the west to the east; (6) whether Officer Oswalt applied his brakes and attempted to avoid hitting Johnson; (7) whether Officer Oswalt traveled with his blue lights on during his pursuit to provide back-up; (8) what was Officer Oswalt's speed during his pursuit to provide back-up; (9) what was Officer Oswalt's speed at the time of the collision with Johnson's person; (10) whether Officer Oswalt's actions and conduct indicated a reckless disregard for the safety and well being of Johnson and others as he proceeded; (11) whether Officer Oswalt's actions and conduct arose to the level of reckless disregard; (12) whether Officer Oswalt knew or reasonably should have known of the presence of pedestrians from the night club located at the intersection of Carver Street and Chrisman Avenue; (13) whether the mud on Johnson's shoe came from the area where the black truck was abandoned and (14) whether Officer Oswalt operated his vehicle with his blue lights on and at such a rate of speed that he could not stop within his range of vision.
¶ 29. While Miss.Code Ann. § 11-46-9(1)(c) does not specifically define the term "reckless disregard," this Court has held:
Since "reckless disregard" is not defined by statute, Maldonado directs this Court's attention to the various sources we have used in the past to define recklessness. This Court examined this issue in Turner v. City of Ruleville, and the Court looked to Black's Law Dictionary for guidance as to the proper definition:
"Reckless disregard of the rights of others" is defined [a]s used in automobile guest law, means the voluntary doing by motorist of an improper or wrongful act, or with knowledge of existing conditions, the voluntary refraining from doing a proper or prudent act when such an act or failure to act evinces an entire abandonment of any care, and heedless indifference to results which may follow and the reckless taking of chance of accident happening *1040 without intent that any occur....
735 So.2d 226, 228-29 (Miss.1999) (quoting Black's Law Dictionary 1270 (6th ed.1991)). Additionally, this issue was also revisited in Maye v. Pearl River County, where we cited a definition of recklessness given by the Fifth Circuit:
The terms "willful," "wanton," and "reckless" have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. The usual meaning assigned to do [sic] terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.
758 So.2d 391, 394 (Miss.1999) (quoting Orthopedic & Sports Injury Clinic v. Wang Labs., Inc., 922 F.2d 220, 224 n. 3 (5th Cir.1991) (emphasis in original)). Additionally, this Court has held that "wantonness" is a failure or refusal to exercise any care, while negligence is a failure to exercise due care. Turner, 735 So.2d at 229 (citing Beta Beta Chapter v. May, 611 So.2d 889, 895 (Miss. 1992)) (quoting Covington v. Carley, 197 Miss. 535, 541-42, 19 So.2d 817, 818 (1944)).
Maldonado, 768 So.2d at 909-10.
¶ 30. On quite a few occasions, this Court has reviewed other MTCA cases involving police actions. In Maldonado, Deputy Sheriff Maldonado was driving a patrol car to a service station for maintenance when he collided with a vehicle driven by Kelly. Id. at 908. At the time of the accident, a water tower partially blocked Maldonado's view causing him not to see Kelly's vehicle until right before the collision. Id. This Court held that while "Maldonado may have been negligent, his actions do not rise to the level of reckless disregard." Id. at 911. Deputy Maldonado and Hinds County were entitled to immunity pursuant to § 11-46-9(1)(c). Id.
¶ 31. In McGrath, this Court has held that pursuant to MTCA, immunity was applicable to the City of Gautier and its police officer. McGrath, 794 So.2d at 987. In that case, the officer's patrol car experienced brake failure causing it to collide with McGrath. Id. The Court based its holding, in part, upon the theory that municipalities are exempt from an injury caused by a police vehicle since the maintenance of a police department is a governmental function. Id. at 987.
¶ 32. In contrast, this Court found in Perry, that a police officer's actions amounted to reckless disregard. City of Jackson v. Perry, 764 So.2d 373, 375 (Miss. 2000). The police officer was on his way to dinner with fellow officers when he was involved in an accident. Id. At the time of the collision, the officer was speeding, but he was not on an emergency call and was not using either the siren or blue lights. Id. This Court held that the officer's actions did show a reckless disregard for the safety and well-being of others and affirmed the trial court's ruling. Id. at 378.
¶ 33. Likewise in Maye v. Pearl River County, 758 So.2d 391, 395 (Miss.1999), this Court held that a deputy sheriff's actions amounted to reckless disregard for the safety and well-being of others. The *1041 deputy backed up an incline knowing that he could not see oncoming traffic. Id. Maye, the other driver, blew her horn, yet the deputy did not respond until his patrol car stuck her vehicle. Id. at 394.
¶ 34. In Turner v. City of Ruleville, 735 So.2d 226, 230 (Miss.1999), the trial court's ruling to grant a motion to dismiss in favor of the City of Ruleville for failure to state a claim was reversed and remanded by this Court. Turner was injured in a collision with a drunk driver. Id. at 227. Turner sued the drunk driver and the City of Ruleville alleging that prior to the accident a city police officer had stopped the drunk driver who later collided with Turner and allowed that visibly intoxicated driver to continue driving. Id. The Court concluded that "[b]y this alleged act, the officer allegedly showed a reckless or wanton and willful disregard for the safety of other drivers on the road, including Turner." Id. at 230.
¶ 35. The facts in the case sub judice are distinguishable. The facts at hand show that Officer Oswalt was responding to a call to provide assistance to Officer White who was in pursuit of a driver evading his attempts to stop the truck. Officer Oswalt was at the intersection of Highway 8 and Chrisman Avenue when he responded to the call. In Officer Oswalt's deposition, he testified that he turned on his blue lights when he turned onto Chrisman Avenue to assist Officer White. Officer Oswalt testified that he used his air horn every 10 to 15 feet and traveled at 45-50 miles per hour driving in the middle of the road. This pursuit occurred during the early morning hours. Johnson, who had a blood-alcohol level of .10%, ran out in front of Officer Oswalt's patrol car. Officer Oswalt tried unsuccessfully to avoid hitting Johnson. Officer Oswalt called for an ambulance.
¶ 36. The record does not establish issues of material fact as to whether the police officers' actions amounted to reckless disregard to the safety and well being of others. While not diminishing the tragedy of Johnson's death, the fact that Johnson's actions contributed to the collision and his death cannot be ignored. Under the specific facts of this case, I would find that the trial court did not err in granting the City's motion for summary judgment.
NOTES
[1] The proper statute defining reckless disregard is Miss.Code Ann. § 11-46-9(1)(c).