¶ 22. After review of the record in this case, I must dissent. I find that the trial court did not err in granting the City's motion for summary judgment. For this reason, I believe that the trial court ruling should be affirmed. *Page 1038 
¶ 23. The Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§11-46-1 to -23 (Rev. 2002), provides immunity to government entities and employees who act within the course and scope of employment duties. Section 11-46-9(1)(c) provides in pertinent part:
 A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
 . . .
 (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury. . . .
Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2002) (emphasis added). In addition, section 11-46-7(2) addresses the Act's coverage when an employee is sued as follows:
 An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.
Miss Code Ann. § 11-46-7(2) (emphasis added).
¶ 24. This Court has stated that "[a]pparent in the language [of Miss. Code Ann. § 11-46-9] is that those officers who act within the course and scope of their employment, while engaged in the performance of duties relating to police protection, without reckless disregard for the safety and well being of others, will be entitled to immunity." McGrathv. City of Gautier, 794 So.2d 983, 985 (Miss. 2001). Indeed, "[t]he purpose of Miss. Code Ann. § 11-46-9 is to `protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim.'" Maldonado v.Kelly, 768 So.2d 906, 909 (Miss. 2000) (quoting City of Jackson v.Perry, 764 So.2d 373, 376 (Miss. 2000)).
¶ 25. In granting the City's motion for summary judgment, the trial judge in the case sub judice held that:
 [This] [c]ourt after having reviewed the pleadings and supporting briefs and having viewed the evidence in the light most favorable to the [p]laintiffs, finds that the officer involved herein, who was responding to a call, did not act with reckless disregard as defined by Miss. Code Ann. § 11-46-7(1). As such, this [c]ourt grants the [d]efendant's [m]otion for [s]ummary [j]udgment.
¶ 26. The City contends that Officer Oswalt's actions did not constitute reckless disregard. Officer Oswalt was responding to a call for back-up assistance running his blue lights and sounding his air horn. In considering the City's motion for summary judgment and Johnson's response thereto, the trial court had before it the following documents: (1) Officer White's deposition; (2) Officer Oswalt's deposition; (3) Officer Bingham's deposition; (4) Mayhall's deposition; (5) Mayhall's statement to Bingham; (6) the Mississippi Crime Laboratory Reports; (7) *Page 1039 
Young's affidavit; (8) investigative reports and forms; (9) Dr. Hayne's post-mortem examination report and (10) the FBI Laboratory Report.
¶ 27. Johnson, however, argues that Officer Oswalt's actions amounted to reckless disregard. Johnson claims that the documents submitted to the trial court created a genuine issue of material fact as to whether Officer Oswalt's conduct demonstrated a reckless disregard for Johnson's safety and well-being. Johnson asserts that there remain fourteen disputed issues of fact which preclude summary judgment.
¶ 28. The fourteen disputed issues on appeal fall into two categories: (1) whether Johnson was the driver of the truck being pursued by the Cleveland Police Department who ultimately fled from Officer White on foot or whether Johnson was merely a pedestrian who was not engaged in criminal activity at the time that he was struck; and (2) whether Officer Oswalt, while in response to an emergency call, was speeding and traveling without activating his blue lights and siren, when he struck Johnson. Specifically Johnson's fourteen disputed issues of fact are as follows: (1) whether Johnson was the driver of the truck pursued by Officer White; (2) whether Johnson was the person who fled from the abandoned truck and ran on foot in front of Officer Oswalt's patrol car; (3) whether Johnson was walking north along the east side of Chrisman Avenue when he was struck by Officer Oswalt's patrol car; (4) what were Johnson's actions and conduct prior to and at the time he was struck by Officer Oswalt; (5) whether Johnson darted out from Officer Oswalt's right, running from the west to the east; (6) whether Officer Oswalt applied his brakes and attempted to avoid hitting Johnson; (7) whether Officer Oswalt traveled with his blue lights on during his pursuit to provide back-up; (8) what was Officer Oswalt's speed during his pursuit to provide back-up; (9) what was Officer Oswalt's speed at the time of the collision with Johnson's person; (10) whether Officer Oswalt's actions and conduct indicated a reckless disregard for the safety and well being of Johnson and others as he proceeded; (11) whether Officer Oswalt's actions and conduct arose to the level of reckless disregard; (12) whether Officer Oswalt knew or reasonably should have known of the presence of pedestrians from the night club located at the intersection of Carver Street and Chrisman Avenue; (13) whether the mud on Johnson's shoe came from the area where the black truck was abandoned and (14) whether Officer Oswalt operated his vehicle with his blue lights on and at such a rate of speed that he could not stop within his range of vision.
¶ 29. While Miss. Code Ann. § 11-46-9(1)(c) does not specifically define the term "reckless disregard," this Court has held:
 Since "reckless disregard" is not defined by statute, Maldonado directs this Court's attention to the various sources we have used in the past to define recklessness. This Court examined this issue in Turner v. City of Ruleville, and the Court looked to Black's Law Dictionary for guidance as to the proper definition:
 `Reckless disregard of the rights of others' is defined [a]s used in automobile guest law, means the voluntary doing by motorist of an improper or wrongful act, or with knowledge of existing conditions, the voluntary refraining from doing a proper or prudent act when such an act or failure to act evinces an entire abandonment of any care, and heedless indifference to results which may follow and the reckless taking of chance of accident *Page 1040 
happening without intent that any occur. . . .
735 So.2d 226, 228 29 (Miss. 1999) (quoting Black's Law Dictionary 1270 (6th ed. 1991)). Additionally, this issue was also revisited in Maye v.Pearl River County, where we cited a definition of recklessness given by the Fifth Circuit:
 The terms `willful,' `wanton,' and `reckless' have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. The usual meaning assigned to do [sic] terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.
758 So.2d 391, 394 (Miss. 1999) (quoting Orthopedic Sports InjuryClinic v. Wang Labs., Inc., 922 F.2d 220, 224 n. 3 (5th Cir. 1991) (emphasis in original)). Additionally, this Court has held that `wantonness' is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." Turner, 735 So.2d at 229 (citing Beta Beta Chapter v. May, 611 So.2d 889, 895 (Miss. 1992)) (quoting Covington v. Carley, 197 Miss. 535, 541 42, 19 So.2d 817, 818 (1944)). Maldonado, 768 So.2d at 909-10.
¶ 30. On quite a few occasions, this Court has reviewed other MTCA cases involving police actions. In Maldonado, Deputy Sheriff Maldonado was driving a patrol car to a service station for maintenance when he collided with a vehicle driven by Kelly. Id. at 908. At the time of the accident, a water tower partially blocked Maldonado's view causing him not to see Kelly's vehicle until right before the collision. Id. This Court held that while "Maldonado may have been negligent, his actions do not rise to the level of reckless disregard." Id. at 911. Deputy Maldonado and Hinds County were entitled to immunity pursuant to §11-46-9 (1)(c). Id.
¶ 31. In McGrath, this Court has held that pursuant to MTCA, immunity was applicable to the City of Gautier and its police officer.McGrath, 794 So.2d at 987. In that case, the officer's patrol car experienced brake failure causing it to collide with McGrath. Id. The Court based its holding, in part, upon the theory that municipalities are exempt from an injury caused by a police vehicle since the maintenance of a police department is a governmental function. Id. at 987.
¶ 32. In contrast, this Court found in Perry, that a police officer's actions amounted to reckless disregard. City of Jackson v.Perry, 764 So.2d 373, 375 (Miss. 2000). The police officer was on his way to dinner with fellow officers when he was involved in an accident. Id. At the time of the collision, the officer was speeding, but he was not on an emergency call and was not using either the siren or blue lights. Id. This Court held that the officer's actions did show a reckless disregard for the safety and well-being of others and affirmed the trial court's ruling. Id. at 378.
¶ 33. Likewise in Maye v. Pearl River County, 758 So.2d 391, 395 (Miss. 1999), this Court held that a deputy sheriff's actions amounted to reckless disregard for the safety and well-being of others. The *Page 1041 
deputy backed up an incline knowing that he could not see oncoming traffic. Id. Maye, the other driver, blew her horn, yet the deputy did not respond until his patrol car stuck her vehicle. Id. at 394.
¶ 34. In Turner v. City of Ruleville, 735 So.2d 226, 230 (Miss. 1999), the trial court's ruling to grant a motion to dismiss in favor of the City of Ruleville for failure to state a claim was reversed and remanded by this Court. Turner was injured in a collision with a drunk driver. Id. at 227. Turner sued the drunk driver and the City of Ruleville alleging that prior to the accident a city police officer had stopped the drunk driver who later collided with Turner and allowed that visibly intoxicated driver to continue driving. Id. The Court concluded that "[b]y this alleged act, the officer allegedly showed a reckless or wanton and willful disregard for the safety of other drivers on the road, including Turner." Id. at 230.
¶ 35. The facts in the case sub judice are distinguishable. The facts at hand show that Officer Oswalt was responding to a call to provide assistance to Officer White who was in pursuit of a driver evading his attempts to stop the truck. Officer Oswalt was at the intersection of Highway 8 and Chrisman Avenue when he responded to the call. In Officer Oswalt's deposition, he testified that he turned on his blue lights when he turned onto Chrisman Avenue to assist Officer White. Officer Oswalt testified that he used his air horn every 10 to 15 feet and traveled at 45-50 miles per hour driving in the middle of the road. This pursuit occurred during the early morning hours. Johnson, who had a blood-alcohol level of .10%, ran out in front of Officer Oswalt's patrol car. Officer Oswalt tried unsuccessfully to avoid hitting Johnson. Officer Oswalt called for an ambulance.
¶ 36. The record does not establish issues of material fact as to whether the police officers' actions amounted to reckless disregard to the safety and well being of others. While not diminishing the tragedy of Johnson's death, the fact that Johnson's actions contributed to the collision and his death cannot be ignored. Under the specific facts of this case, I would find that the trial court did not err in granting the City's motion for summary judgment.