943 So.2d 53 (2006)
MISSISSIPPI DEPARTMENT OF WILDLIFE, FISHERIES AND PARKS, Appellant
v.
Alice BRANNON, Appellee.
No. 2004-CA-00246-COA.
Court of Appeals of Mississippi.
March 28, 2006.
Rehearing Denied August 1 and 22, 2006.
*55 John Gordon Roach, Jr., McComb, attorney for appellant.
Ronald L. Whittington, McComb, attorney for appellee.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. Alice Brannon brought her claim for personal injuries, under the Mississippi Tort Claims Act, against the Mississippi Department of Wildlife, Fisheries and Parks (the "Department"). After a bench trial, the circuit judge rendered a judgment in favor of Mrs. Brannon and awarded damages of $240,000, which was reduced to $180,000 after Mrs. Brannon was assessed to be twenty-five percent at fault. Finding error, we reverse and render.

FACTS
¶ 2. The Department is responsible for the operation of Percy Quin State Park in Pike County, Mississippi. Miss.Code Ann. § 55-3-33(1)(a) (Rev.2003). Percy Quin and other state parks provide outdoor recreational activities. Examples of the activities available, include camping, hiking, boating, fishing, swimming, tennis, archery and golf. Visitors may stay in cabins or camp in primitive areas or in campgrounds with roads, camper pads and bathhouses.
¶ 3. Alice and Aubrey Brannon were frequent visitors to Percy Quin, having visited at various times over six years. On March 7, 2000, they were camping at Percy Quin with their grandchildren. Around 9:00 p.m., Mrs. Brannon was carrying her four-year-old granddaughter from the bathhouse back to their campsite when she fell and was injured.
¶ 4. On October 26, 2000, Mrs. Brannon filed an initial accident report. In the report, she stated:
Ms. Alice Brannon was carrying her grandchild from the Bathhouse to Site 28 when she slipped off the road and fell breaking her hip. Her husband took her home to the doctor. Not sure about the date this happened. Will put date down when we find out when it was.
¶ 5. On June 7, 2001, Mrs. Brannon filed her complaint against the Department. She asserted negligence, i.e., premises liability, against the Department and claimed that the Department created the hazardous condition which caused her fall and had actual knowledge of the condition prior to her fall. She asked for damages in the amount of $250,000.
¶ 6. In her testimony, Mrs. Brannon claimed that she had taken her grandchildren to the bathhouse to take a shower. She then testified:
Q. Tell us what happened whenever you prepared to leave the bathhouse, what did and who was with you.
A. I had both the girls. I was going to take  McKenzie was finished. They were playing in the shower. You know how kids do. But I was going to take McKenzie back, and so I picked her up. We started down towards the path coming down, and as I walked, all of a sudden I couldn't see in front of me.
. . . .

*56 Q. What happened as you walked onto and down the roadway?
A. As I came down  and all of a sudden it was like I could not see. And the minute I couldn't, I did feel panic that I couldn't see. And the next minute that was it. I was gone.
Q. What happened?
A. I took one, two maybe, little baby steps when I couldn't see, and my foot went across 
Q. Which foot, ma'am?
A. It was my right foot.
Q. And what happened? What did you do?
A. My foot like hit, and when it hit, it just went down. I kind of  my foot was  I felt middle ways. I remember the feeling at the time. And I remember kind of struggling trying to hold my balance, and then I went back.
Mrs. Brannon claimed that she could not see because of the dark. She did not carry her flashlight. At trial, she identified a photograph of the area where she fell. The photograph included a tape measure, but the markings on the tape measure cannot be seen in the picture. Mrs. Brannon testified that the area was four to four and a half inches deep, where she stepped off the road. She described it as a "drop-off" where her foot went to the edge and then went down. She stated that she would not describe it as a hole. She claimed that the drop-off was covered by leaves and pine straw.
¶ 7. When she fell, Mrs. Brannon landed on her right elbow and hip, breaking her right hip. Mrs. Brannon could not move, so she sent McKenzie to get Mr. Brannon to help her. She tried to continue working for three and a half days after the accident. However, she eventually learned she had a broken hip, had to undergo surgery, and was confined to a wheelchair and then a walker for sixteen weeks.
¶ 8. The trial was held on October 3, 2003. After the parties submitted proposed findings of fact and conclusions of law, the trial judge entered a final judgment on November 19, 2003. The trial judge found that the Department was negligent and was not entitled to immunity under the Mississippi Tort Claims Act.

ANALYSIS
1. The appropriate standard of review.
¶ 9. In a claim based on the Mississippi Tort Claims Act, the trial judge sits as the finder of fact. Miss.Code Ann. § 11-46-13(1) (Rev.2002). "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence." Donaldson v. Covington County, 846 So.2d 219, 222 (¶ 11) (Miss. 2003). The circuit judge's findings of fact and conclusions of law will not be disturbed unless the judge abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Miss. Dep't of Transp. v. Trosclair, 851 So.2d 408, 413 (¶ 11) (Miss.Ct. App.2003).
¶ 10. The Department challenges the applicability of this standard of review in this case. It argues that the trial judge adopted Mrs. Brannon's proposed findings of facts and conclusions of law almost verbatim and simply "filled in the blanks" for percentages of fault apportionment. The Department cites us to Miss. Dep't of Transp. v. Johnson, 873 So.2d 108, 111 (¶ 8) (Miss.2004), where the supreme court held:
"A trial judge's finding is entitled to the same deference as a jury and will not be *57 reversed unless manifestly wrong. A reviewing court cannot set aside a verdict unless it is clear that the verdict is a result of prejudice, bias, or fraud, or is manifestly against the weight of credible evidence." . . . However, we have also stated that when the trial judge is sitting as the finder of fact, and chooses to adopt in toto a party's proposed findings of fact and conclusions of law, we will conduct a de novo review of the record. . . .
This Court will not set aside such findings [of the trial judge] on appeal unless they are manifestly wrong. . . . Where the [trial judge] has failed to make his own findings of fact and conclusions of law, this Court will "review the record de novo." Brooks v. Brooks, 652 So.2d 1113, 1118 (Miss.1995) (chancellor did not make his own findings, rather adopted litigant's findings and applied wrong legal standard). . . .
Here the proposed findings of fact and conclusions of law which Johnson's lawyer mailed to the judge are identical to the findings of fact and conclusions of law which the judge signed on November 12, 2002. There can be no doubt that the trial judge adopted and entered verbatim Johnson's proposed findings of fact and conclusions of law. The only difference is that in the version signed by the trial judge, he "filled in the blanks" for the percentages of fault apportioned to Crump, Mauney and MDOT. Additionally, our standard of review is de novo on questions of law. . . . Thus, consistent with Holden, we today conduct a de novo review not only of the law, but also the trial judge's findings of fact.
(citations omitted)
¶ 11. We are of the opinion that the Department's argument has merit and the normal deferential standard of review is not applicable. Nevertheless, we reject the Department's claim that a de novo review is appropriate.
¶ 12. There are at least three cases in which this de novo standard was applied. See Miss. Dep't of Transp. v. Johnson, 873 So.2d 108, 111 (¶ 8) (Miss.2004); Holden v. Frasher-Holden, 680 So.2d 795, 798 (Miss. 1996); Brooks v. Brooks, 652 So.2d 1113, 1118 (Miss.1995). We believe that there was an inaccurate statement of law in Brooks that needs to be addressed and clarified, to ensure the proper appellate review. We explain.
¶ 13. In Brooks, the supreme court held:
Where the chancellor adopts, verbatim, findings of fact and conclusions of law prepared by a party to the litigation, this Court analyzes such findings with greater care, Omni Bank v. United Southern Bank, 607 So.2d 76, 83 (Miss. 1992), and the evidence is subjected to heightened scrutiny, Matter of Estate of Ford, 552 So.2d 1065, 1068 (Miss.1989). Because the chancellor erred in adopting the litigant's findings of facts and conclusions of law in the case sub judice, the deference normally afforded a chancellor's findings of fact is lessened. Omni Bank v. United Southern Bank, 607 So.2d 76, 83 (Miss.1992); Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1266 (Miss.1987).
The chancellor erred by applying an incorrect legal standard, and also by adopting a litigant's findings of fact and conclusions of law. Hence, we do not give deference to the findings of fact and conclusions of law of the lower court. Instead, we review the record de novo. Bank of Mississippi v. Hollingsworth, 609 So.2d 422, 424 (Miss.1992). See also Omni Bank v. United Southern Bank, 607 So.2d 76 (Miss.1992); Bean v. Broussard, 587 So.2d 908 (Miss.1991); *58 Matter of Estate of Ford, 552 So.2d 1065 (Miss.1989); Rice Researchers, Inc. v. Hiter, 512 So.2d 1259 (Miss.1987).
Brooks, 652 So.2d at 1118. The cases cited in the last paragraph simply do not stand for the proposition asserted. Indeed, none of these cases find that de novo review is appropriate. Bean has no language applicable. The remaining cases cited confirm that the standard of review, albeit less deferential, is not de novo. See Hollingsworth, 609 So.2d at 424; Omni Bank, 607 So.2d at 83; In re Estate of Ford, 552 So.2d at 1068; and Rice Researchers, Inc., 512 So.2d at 1265.
¶ 14. Moreover, the court's opinion in Rice Researchers, Inc. actually disputes this proposition, when the court held:
A word about our scope of review. Whereas herea trial judge sits without a jury, this Court will not disturb his factual determinations where there may be found in the record substantial supporting evidence. . . . This is true whether the findings relate to matters of evidentiary fact or ultimate fact. . . .
Put another way, this Court must affirm a chancellor on a question of fact unless upon review of the record we be left with the firm and definite view that a mistake has been made. . . . This Court must examine the entire record and accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact, must be accepted. . . .
And, finally, the trial judge, sitting in a bench trial as the trier of fact, has sole authority for determining credibility of the witnesses. . . .
Today's case presents a variation upon this familiar theme. The detailed findings of fact below resulted from the trial judge's approving almost verbatim the post-trial proposed findings of fact submitted by counsel for Defendants. These findings simply are not the same as findings independently made by the trial judge after impartially and judiciously sifting through the conflicts and nuances of the trial testimony and exhibits. The matter is important, because the primary reason the law limits our scope of review is that the trial judge is uniquely situated, both institutionally and pragmatically, to "smell the smoke of the battle." . . . Here the trial judge was a non-smoker.

Still, we cannot and will not review this case de novo. Obviously, the Chancery Court was of the view that over all Defendants Williams, et al., had the better of the battle. That determination is entitled to deference, though sensibly not as much as in the ordinary case.
RRI contends that while such a practice may not constitute reversible error in and of itself, the appellate courts in such a case must engage in much more careful analysis of adopting findings than in cases where the findings and conclusions have been authorized by the trial judge himself. . . . With this we agree. While an appellate court may not summarily disregard findings adopted by a trial judge verbatim from the submission of the prevailing party, the appellate court must view the challenged findings of fact and the appellate record as a whole with a more critical eye to ensure that the trial court has adequately performed its judicial function.

Rice Researchers, Inc., 512 So.2d at 1264-65 (citations omitted and emphasis added).
¶ 15. Here, we have compared Mrs. Brannon's proposed findings of fact and conclusions of law and the trial judge's *59 final judgment. We find that the circuit judge inserted a word or sentence at various points and deleted other words or sentences. However, we find that the final judgment is substantially verbatim to Mrs. Brannon's proposed findings of fact and conclusions of law.
¶ 16. Accordingly, we conclude that the appropriate standard of review requires that the appellate court "analyzes such findings with greater care, and the evidence is subject to heightened scrutiny." In re Estate of Grubbs, 753 So.2d 1043, 1046-47 (¶ 8) (Miss.2000). "This Court must view the challenged findings and the record as a whole `with a more critical eye to ensure that the trial court has adequately performed its judicial function.'" Id. (quoting Rice Researchers, Inc., 512 So.2d at 1265).
2. Did the trial judge err in admitting Mike Varnado as an expert and in admitting his opinions based on Mrs. Brannon's photographs?
¶ 17. Mrs. Brannon called Mike Varnado as her first witness. At the time of her accident, Mr. Varnado was the park manager of Percy Quin State Park. In the final judgment, the court made the following finding about Mr. Varnado's testimony:
The Court finds the testimony of Mr. Mike Varnado, park manager from 1978 through December, 2000, to be credible and the Court finds after considering his testimony and all other testimony with regard to the condition of the road surface, its expected use and the practice with regard to inspection, road repair, lighting and responsibilities with regard to noticing and correcting such a condition, that Percy Quinn State Park personnel and employees did not use ordinary care in the exercise of their duties. The testimony of Mr. Varnado establishes without contradiction that the area where Mrs. Brannon was walking was expected to be used as a pedestrian walkway as well as a roadway. Lighting was not available by deliberate choice and this choice is understandable as explained by the witness, Mike Varnado, but at the same time, it dictates the need for appropriate inspection and for level pedestrian walkway areas to include appropriate feathering and sloping of edges of paved roads and repair of dangerous conditions where pedestrian traffic will be in evening hours. Likewise, park guests such as Mrs. Brannon and other similarly situated [guests] must exercise reasonable care and caution to reasonably assure that sufficient lighting, even if only artificial light provided by hand lantern or flashlight is available.
(emphasis added).
¶ 18. Based on our discussion in section 1., we acknowledge that the trial judge's "findings" are verbatim from Mrs. Brannon's proposed findings of fact and conclusions of law submitted by Mrs. Brannon. The judge inserted only the language above in italics. Hence we must "analyze such findings with greater care, and the evidence is subject to heightened scrutiny." Grubbs, 753 So.2d at 1046-47 (¶ 8).
¶ 19. The Department argues that the trial judge abused his discretion in admitting Mr. Varnado as an expert witness. The Department objected because Mr. Varnado was not designated as an expert in discovery or in the pre-trial order. In her brief before this Court, Mrs. Brannon argues that her tender of Mr. Varnado as an expert witness was withdrawn and the record is silent as to any expert opinion sought or given by Mr. Varnado. Unfortunately, the record is not as clear as the argument in her brief.
¶ 20. Mr. Varnado was the first witness called by Mrs. Brannon. He was called as *60 an adverse witness. He was designated as a fact witness in the pre-trial order and was not identified as an expert witness in discovery. In City of Jackson v. Perry, 764 So.2d 373, 383-84 (¶¶ 51-53) (Miss. 2000), the supreme court held, "[a]bsent special circumstances, the court will not allow expert testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least 60 days before trial." Here special circumstances did not exist. Mr. Varnado was neither listed as an expert in a response to discovery under Rule 26(b)(4) of the Mississippi Rules of Civil Procedure nor as required by Rule 4.04 A of the Uniform Rules of Circuit and County Court. Clearly, there was no basis for the court to allow expert testimony from Mr. Varnado. The court was in error to allow Mr. Varnado to testify as an expert.
¶ 21. Mrs. Brannon now argues that Mr. Varnado gave no expert testimony, and he was not asked a single question that sought an expert opinion. The transcript indicates that Mrs. Brannon's counsel asked the following question:
Mr. Varnado, we're not suggesting that people fell every day; we're just dealing with the facts in this case. And based upon your investigation of this matter, it's your understanding from the facts that this contributed to the accident. This being the condition of the road surface, shoulder and of lighting that was not available.
John Gordon Roach, counsel for the Department, objected to this question on the ground that he was not qualified as an expert. The judge then held, "[W]e will sustain the objection. If you wish to qualify him as an expert, . . . then please go ahead and qualify him as an expert and we'll allow the question." Following the judge's suggestion, Mrs. Brannon's counsel asked several questions about Mr. Varnado's background and experience. The following exchange then occurred:
Mr. Whittington: Your Honor, I would tender Mr. Varnado as an expert with regard to the safety management of the park facility based upon his years of experience as well as his continuing training and his supervision of that park facility for 22 years.
Mr. Varnado: Your Honor, I would respectfully show, of course, Mr. Varnado was not listed as an expert, number one; and secondly, the ultimate question he was asked a little while ago was whether these factors contributed to the injuries or the accident which makes him in the realm of  that's an assumption or presumption only for experts, and Mr. Varnado's testimony does not meet the standard for that type of a question. I think he can ask him about his responsibilities as far as being the manager and what  the layout. I think that's been shown with the picture. But I don't think he can go another step further and be able to say whether anything contributed to that.
Mr. Whittington: I'll withdraw the question, Your Honor.
The Court: Now, you
Mr. Whittington: I'm sorry.
The Court:  can't operate a park for 22 years without investigating accidents.
Mr. Whittington: Yes, sir.
The Court: It can't be done. The defense has well known Mr. Varnado's background. I see no prejudice at all by allowing this question to be  by allowing him to testify as an expert. And I accept him as an expert in the field of park management, which would include, out of necessity the investigations and review of investigations of accidents including the cause of what might contribute to the cause *61 of an accident. So, I think he is amply qualified to be an expert in the area of overall park operations and management.
Mr. Roach: Your Honor, may I be heard on that?
The Court: Yes, sir
Mr. Roach: I think.
The Court: Excuse me. I thought you had been heard. If you are going to want to be heard after I rule, I don't think it contributes to anything. I want you to speak before I rule. Now, you had stopped talking. I assumed you were through. I don't appreciate people putting stuff in the record after I rule. I don't think it contributes to anything. So, I want all counsel to let me hear what you've got to say before I rule and not tack stuff in the record after I rule. It does me no good and it only delays the trial of this case. Now, I've already ruled on this.
Contrary to the assertion in the brief, Mrs. Brannon's counsel did not then advise the trial judge that he did not seek to use Mr. Varnado as an expert witness. Instead, Mrs. Brannon's counsel promptly proceeded to ask Mr. Varnado a number of questions about the site of the accident based on the assumption that the photographs, which were taken several months after the accident, were indeed the site where the accident occurred. Mr. Varnado never testified that he had personal knowledge of the location where the accident was to have occurred.
¶ 22. The admissibility of evidence rests within the trial court's discretion. Crawford v. State, 754 So.2d 1211, 1215 (¶ 7) (Miss.2000) (overruled on other grounds). Unless his or her judicial discretion is abused, this Court will not reverse his or her ruling. Id. The qualifications of an expert in the fields of scientific knowledge is left to the sound discretion of the trial judge. Id. His or her determination on this issue will not be reversed unless it clearly appears that the witness is not qualified. Id. However, it is error for an expert witness to testify when he was not properly designated as an expert, and the opposing side had asked for this information in discovery. URCCC 4.04; City of Jackson v. Perry, 764 So.2d 373, 384 (¶ 53) (Miss.2000).
¶ 23. Mrs. Brannon offered Mr. Varnado as an expert witness. Although Mrs. Brannon's counsel attempted to withdraw the question, counsel remained silent after the trial judge "accepted" Mr. Varnado as an expert witness in the "field of park management, which would include, out of necessity the investigations and review of investigations of accidents including the cause of what might contribute to the cause of an accident." Now, Mrs. Brannon's counsel argues that Mr. Varnado did not offer any expert testimony. In fact, counsel now concedes that the tender of Mr. Varnado as an expert witness was "withdrawn."
¶ 24. Counsel urges us to look at Mr. Varnado's testimony to conclude that it "is totally silent as to any expert opinion sought or given by Mr. Varnado." The relevant portion of his testimony reads:
Q. If the condition shown, in the photograph that's been marked Exhibit 2, existed on March 7th and previous  and I believe you and I agreed that that is a condition that, in all likelihood, did not occur overnight  if that condition existed for some period of time, among Mike Nelson and the rangers and the people working with them, that condition should have been recognized as a hazard and it should have been repaired; isn't that correct?

*62 A. It's definitely something that should have been repaired. Again, looking at the picture, I don't know how deep it is. It could have been hid [sic] by some of the leaves and stuff. But if they  any of those people saw that, it would have been fixed. They should have known it. They should have known about it, should have fixed it.
Q. Should have known about it and they should have fixed it; isn't that right?
A. You know, that's correct. Anything that would be a hazard  a health hazard or a safety hazard, we want it fixed.
Mrs. Brannon urges that this is a common sense admission of a duty to exercise reasonable care and an admission that the [Department's] employees failed therein when the entire record is reviewed. Alternatively, she claims that this is a proper opinion under Rule 701 of the Mississippi Rules of Evidence.
¶ 25. We disagree. The question requires that Mr. Varnado assume several facts of which he lacked personal knowledge. Mr. Varnado had already testified that he was not aware of this condition at the park. He also testified that he looked for and could not locate where this condition was located. Mrs. Brannon's counsel asked Mr. Varnado to review and rely on what was depicted in several photographs.[1] We find that the testimony quoted above did not ask Mr. Varnado to rely on his perception or matters of which he had personal knowledge.[2] Instead, it sought evidence in the form of an "opinion or otherwise" from a witness who is "qualified as an expert by knowledge, skill, experience, training, or education," to testify about "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." It was expert testimony, which should not have been allowed. See Griffin v. McKenney, 877 So.2d 425, 438-41 (¶¶ 46-54) (Miss.Ct. App.2003) (treating physician in medical malpractice action offered impermissible expert testimony); see also Foster v. Noel, 715 So.2d 174, 183 (¶¶ 53-54) (Miss.1998) (treating physician rendered improper expert testimony); Langston v. Kidder, 670 So.2d 1, 4 (Miss.1995) (error for a party, not designated as an expert witness, to testify to industry standards and whether the defendant met those standards); and Scafidel v. Crawford, 486 So.2d 370, 372 (Miss.1986) (treating physician could offer lay testimony as to facts and circumstances surrounding the care and treatment of the patient). Accordingly, we find that the trial judge was in error to admit expert testimony from Mr. Varnado.
3. Whether the court erred when it did not grant immunity from liability under Miss.Code Ann. § 11-46-9(1)(v)?
¶ 26. The Department claims that it was entitled to immunity under the Mississippi Tort Claims Act. Miss.Code Ann. §§ 11-46-1 to -23 (Rev.2002). Specifically, the Department argues that it was error to not grant immunity pursuant to *63 Mississippi Code Annotated Section 11-46-9(1)(v)(Rev.2002). It contends that Mrs. Brannon failed to present sufficient proof that a dangerous condition existed or was caused by negligent or other wrongful conduct of an employee of the Department, or that the Department had actual or constructive notice and an adequate opportunity to protect or warn against. Mrs. Brannon argues that the trial court considered and rejected the Department's immunity defense under Section 11-46-9(1)(v).
¶ 27. We begin our analysis with the appropriate standard of review. If the final judgment contained conclusions of law that were actually made by the presiding trial judge, we would afford them deference. Here, however, the trial judge relied on Mrs. Brannon's counsel to state his legal findings verbatim. Thus, we "must view the challenged findings of fact and the appellate record as a whole with a more critical eye to ensure that the trial court has adequately performed its judicial function." Rice Researchers, Inc., 512 So.2d at 1264-65.
¶ 28. Our analysis begins with the final judgment.

ANALYSIS OF AND CONCLUSIONS OF LAW BASED THEREON
The trial court is afforded understanding of the Mississippi Tort Claims Act by the Mississippi Supreme Court's decision in Stewart ex Rel. Womack v. City of Jackson, 804 So.2d 1041 (Miss.2002). MTCA is the exclusive civil remedy against the Mississippi Department of Wildlife, Fisheries and Parks, as it is against any other governmental entity or employee. The MCTA waives sovereign immunity from claims for damages arising out of torts of governmental entities and their employees L.W. v. McComb Separate Mun. Sch. Dist., 754 So.2d 1136 (Miss.1999). Certain circumstances and conduct are exempt from this waiver of immunity. The defendant asserts that it enjoys immunity.
14. In its answer the defendant asserts that it is exempt from liability for claims alleged under MTCA pursuant to Section 11-46-9(1)(b), (d), (e), (f), (g), (p), and/or (v). The Court finds that the record in this case does not substantiate or establish an exception from liability based upon 11-46-9(1)(e), (f), (g) and (p). This case is a negligence action and the defendant has failed to offer evidence that demonstrates an exemption based upon these subparagraphs of Section 11-46-9. The Court finds that it is required to address whether an exemption from liability exits based upon the provision of Section 11-46-9(a)(b), (d) and/or (v). Exemptions from waiver that are germane to the case sub judice are
(1) a governmental entity and its employees acting within the course and scope of their employment, or duties shall not be liable for any claim: . . .
(b) arising out of any act or omission or an employees of a governmental entity exercising ordinary care in reliance upon, or in the execution of performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid. . . .
(d) based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused . . .
(v) arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee *64 of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care;
Miss.Code Ann. Section 11-46-9 (Rev. 2001).
15. The Court finds that this case is controlled by the rules of law set forth and explained in Stewart ex. rel Womack v. City of Jackson, supra. And the authorities cited with approval and explained therein. The Court follows this decision and those other authorities including, but not limited to, Jones v. Miss. Dept. of Transp., 744 So.2d 256, Leflore County v. Givens, 754 So.2d 1223 (Miss.2000) and United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). The Court finds as a matter of law that there is not a state or federal law germane to the facts of this case that created a legal obligation on the part of the Mississippi Department of Wildlife, Fisheries and Parks that would thereby exempt the defendant from liability.
¶ 29. The trial judge was correct to find that "it is required to address whether an exemption from liability exists based upon the provision of Section 11-46-9(1)(b), (d) and/or (v)." However, the cases cited in paragraph 15 of the final judgment discuss only cases that interpret Section 11-46-9(1)(b). None of these cases are applicable here. The court's final judgment omitted any discussion or consideration of Section 11-46-9(1)(v).
¶ 30. If this case were not against a governmental entity, Mrs. Brannon's claim would be considered under our laws of premises liability. We, like the trial judge, would conclude that Mrs. Brannon was an invitee. Thus, the business owner (the Department) owes a business invitee (Mrs. Brannon) a duty of ordinary care to keep the business premises in a reasonably safe condition. Waller v. Dixieland Food Stores, Inc., 492 So.2d 283, 285 (Miss. 1986). The owner has a duty to warn invitees of dangerous conditions which are not apparent to the invitee, of which the owner or occupier knows or through the exercise of reasonable care should know. Id. However, the owner is not an insurer against all injuries which may occur on the premises. Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d 293, 295 (Miss.1988).
¶ 31. However, since the Mississippi Tort Claims Act grants immunity under certain circumstances, we must consider whether Section 11-46-9(1)(v) is applicable. Under this statute, Mrs. Brannon may defeat the immunity defense if she can prove: (1) a dangerous condition, (2) on the government entity's property, (3) which the government entity caused by negligence or wrongful conduct, or of which it had actual or constructive notice and adequate time to protect from or warn against, and (4) the condition was not open and obvious. Id.; Lowery v. Harrison County Bd. of Supervisors, 891 So.2d 264, 267 (¶ 12) (Miss.Ct.App.2004). There was absolutely no evidence that the Department either caused or had actual notice of the drop-off, i.e., the dangerous condition. Miss.Code Ann. § 11-46-9(1)(v). Hence, our analysis must focus on whether the Department had constructive notice and an adequate opportunity to warn against.
¶ 32. What constitutes a "dangerous condition" is not defined by Mississippi law and is to be determined by the trier of fact. Lowery, 891 So.2d at 267 (¶ 11). In the final judgment, the court found:
The Court finds that the road surface at this particular point where Mrs. Brannon *65 stepped was not feathered and properly sloped into the adjoining shoulder, but was irregular and that a distance of approximately four to four and one-half inches separated road surface from shoulder surface resulting in a hole or abyss into which a pedestrian could inadvertently step, stumble or fall. That leaves and pine straw from overhanging trees appear to have covered the edge of the road and shoulder at the point of the fall. Such leaves and pine straw that fell on the road surface would be blown to the edge of the road by passing vehicles. Exhibit P-1 shows the trees along the road. Exhibit P-2 shows the edge of the road at the point of the fall. Exhibit P-5 shows the pine straw and leaves removed to measure the difference between the road surface and dirt. The condition was not open and obvious.

The quoted portion in italics was not contained in Mrs. Brannon's proposed findings of fact and conclusions of law and was the most significant insertion of language in the final judgment by the trial judge. Hence, we must give heightened deference to this finding.
¶ 33. The record simply does not support the finding that the dangerous condition was a "hole or abyss." Mrs. Brannon herself testified it was a drop-off. Others described it as a wash-out. Clearly, it was not an "abyss."
¶ 34. However, it is the next finding of the trial judge that we believe determines the outcome of this case. The trial judge found that the:
leaves and pine straw from overhanging trees appear to have covered the edge of the road and shoulder at the point of the fall. Such leaves and pine straw that fell on the road surface would be blown to the edge of the road by passing vehicles. . . . Exhibit P-5 shows the pine straw and leaves removed to measure the difference between the road surface and dirt. The condition was not open and obvious.
¶ 35. Mrs. Brannon fell at the side of the road, where the asphalt ends and the dirt begins. She claims that she did not see the drop-off. The trial court found that the area was covered in leaves and pine straw and that it was "not open and obvious" to Mrs. Brannon. The Department admitted that a significant drop-off could be dangerous to pedestrians. There was ample evidence that the park rangers routinely examine the grounds for such conditions.
¶ 36. John Green was the risk management supervisor for the Department in 2000. He was responsible for checking risk management, loss prevention and safety factors at the state parks. He testified that he was responsible for examining all the roads and road sides leading into and within the state parks. On February 15 and 16, 2000, about a month before Mrs. Brannon's fall, Green inspected Percy Quin State Park. His inspection occurred during the daytime, afternoon, early evening and after dark. He testified that one of the reasons to be there after dark was to check the roadway, walks, and the areas around the campgrounds. He testified that based on his inspection of the roads, there were no drop-offs or wash-outs that needed to be corrected. Green's inspection report was admitted to evidence. The report did not find a drop-off where Mrs. Brannon fell.
¶ 37. There is absolutely no evidence that the Department had prior notice of the drop-off where Mrs. Brannon fell. Based on the trial judge's finding, the drop-off was covered by leaves and pine straw. He concluded it was not open and obvious to Mrs. Brannon. Likewise, the testimony indicated that the condition was not open and obvious to the park management, *66 park rangers or Department risk management inspectors.[3] There was no evidence that the Department failed to exercise reasonable care in its inspections of the roadways. Instead, the trial judge held that "[t]he condition of the feathering and sloping at the edge of the roadway in the public pedestrian walkway area should have been inspected, found and repaired. Park employees did not repair same." This is simply not the appropriate standard. The trial judge's conclusion makes the Department an insurer against all injuries which may occur on the premises. Jerry Lee's Grocery, 528 So.2d at 295.
¶ 38. We find that there was insufficient evidence to establish that there was a dangerous condition on the Department's property of which it had constructive notice and time to correct or warn against. Therefore, we find that the trial judge committed reversible error in ruling that the Department was not entitled to immunity under Mississippi Code Annotated Section 11-46-9(v). Accordingly, we reverse and render the judgment.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J. AND MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. LEE, J., DISSENTS WITHOUT SEPARATE OPINION.
NOTES
[1] The photographs were taken by Mr. Brannon several months after the accident. One of the photographs, has a tape measure that attempts to depict the edge of the road and, more particularly, the depth of the difference between the asphalt and the dirt. The markings of the tape measure are not clearly shown on the photograph.
[2] Under M.R.E. 701, a lay witness's opinion testimony must be "rationally based on the perception of the witness, . . ., and © not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."
[3] In Dow v. D'Lo, 169 Miss. 240, 248-49, 152 So. 474, 475-76 (1934), the supreme court held that:

The measure of the duty of a municipality in the maintenance of its streets is to use ordinary care to keep them in a reasonably safe condition for persons using ordinary care and prudence. . . . There is no assertion in the evidence that the town authorities had actual knowledge of the hole in the sidewalk, but the case is based upon the contention that there was constructive notice. The rule in that respect is that the danger must have been one which should have been discovered by the town authorities on an inspection made with ordinary care and within a reasonable time, and that after such notice there shall have been a reasonable time for the repair or remedy of the danger. There is no fixed requirement as to any formal inspection, or when inspection shall be made or how often, that question depending upon a variety of circumstances, among which are to be considered the size of the municipality, and, therefore, the number of its active municipal officers charged with such duties, and whether the location of the defect is on one of the main and much-used thoroughfares, or whether in a remote location not frequently used for general traffic. And while all these questions are usually for the jury, nevertheless, when the evidence is insufficient, it is the duty of the court to so hold and to direct a verdict.
. . . .
The fact that mere passers-by did not observe or discover a dangerous defect is not sufficient to relieve a municipality of constructive notice; but, if the defect or danger be such as not to be observable by those who constantly pass day by day or who for years have lived and labored at the location in question, constructive notice cannot be charged upon the municipality unless the danger was the result of faulty work by the municipality itself.
(citations omitted).