BARNES, J., for the Court.
 

 ¶ 1. Lynda Presley filed suit against Jackson police officer Miranda Morton and the City of Jackson (the City) pursuant to the Mississippi Tort Claims Act (MTCA) stemming from a vehicular accident between Presley and Officer Morton. A bench trial ensued in the Circuit Court for the First Judicial District of Hinds County, with a final judgment entered in favor of Presley. The City appealed. Finding no error, we affirm.
 

 STATEMENT OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On May 20, 1998, at approximately 5:30 p.m., Officer Morton, an on-duty officer with the Jackson Police Department (JPD), was in her police cruiser patrolling an area near the “five-points” intersection
 
 [1]
 
 
 *580
 
 in Jackson, Mississippi, when she received ! a call from the dispatcher. A white male j was reported lying in the street in the ¡ Georgetown area, unresponsive and bleed- | ing.
 
 [2]
 
 Officer Morton knew the dispatcher ' had called another officer to assist her, but j she maintained it “was [her] call.” Officer j Morton proceeded south on Prosperity j Street to Woodrow Wilson Avenue, where ; she turned right. Officer Morton did not | initially turn on her blue lights or siren, j although traffic was extremely heavy as it' was peak rush hour. Having difficulty , getting into the left lane in order to turn left off of Woodrow Wilson Avenue and travel south to the Georgetown area due to the traffic, Officer Morton turned right onto Livingston Road and turned around in a parking lot. At this point, Officer Morton turned on her blue lights and sirens. Now driving south on Livingston Road, Officer Morton came upon the busy “five-points” intersection, where the traffic signal facing her was red. Officer Morton testified she knew “five points” was considered a dangerous and “high-risk intersection.”
 

 ¶ 3. Officer Morton stated that she carefully proceeded into the intersection, against the red light, with her blue lights and siren on, utilizing her buzzer, crossing one lane at a time at approximately five miles per hour. The first two lanes of traffic on Woodrow Wilson Avenue stopped for Officer Morton, and she was able to cross them. However, when she came to the third lane of traffic, Officer Morton’s view was obstructed by a large truck
 
 [3]
 
 in the second lane. At this same time, Presley was traveling west on Woodrow Wilson Avenue in the left hand (southern-most) lane proceeding into the intersection. with the right-of-way due to a green signal light, at approximately twenty to twenty-five miles per hour. She testified she never saw or heard Office Morton’s patrol car enter the intersection. — her view of that direction was blocked by the large bobtail truck which was beside Presley’s vehicle in the second lane, traveling in the same direction. Further, Presley’s windows were up, and her radio was on. Presley claims the collision occurred when, as Presley passed the bobtail truck, Officer Morton’s vehicle suddenly struck the right passenger side of Presley’s pickup truck, causing her vehicle to roll over several times and come to rest upside down.
 

 ¶4. Catouche Body, an attorney, witnessed the accident and testified at the bench trial. He was stopped at a red light at the intersection traveling east, and he was first in line. He corroborated the color of the signal lights and that neither party could see the other because of the bobtail truck. He also confirmed that Officer Morton was using a buzzer as she entered the intersection, at approximately five miles per hour, and it was a violent collision.
 

 ¶ 5. Sergeant L.C. Russell, the precinct officer who investigated the accident, testified that he determined the call to which Officer Morton was responding did not require her to utilize her blue lights or siren, or proceed through a red light against traffic. Also, he determined that both vehicles’ views were completely obstructed by the bobtail truck. He agreed with Presley’s counsel that it was inappro
 
 *581
 
 priate for Officer Morton to pull out into oncoming traffic in this situation.
 

 ¶ 6. After the accident, Presley was transported via ambulance to an emergency room at a local hospital. Presley sustained significant injuries due to the collision, including numerous bruises, lacerations, internal bleeding, and a neck injury. Presley entered into evidence several thousands of dollars in medical expenses she had incurred because of the accident, which the City did not contest. She maintained that she continues to have medical problems related to her neck and back which have negatively impacted the quality of her life.
 

 ¶ 7. The deposition of Dr. Harry Daniel-son, an expert in the field of neurology, was admitted into evidence. He saw Presley for neck and back pain nearly a year after the accident. He attributed the May 20 accident to Presley’s neck problems and recommended cervical surgery that would cost approximately $30,000.
 
 [4]
 
 At the time of the hearing, however, Presley had been unable to undergo the surgery due to lack of medical insurance and the financial means to pay for the surgery. Presley sustained a loss in income due to the May 20 accident — as she was unable to work for eight months.
 

 ¶ 8. Presley timely filed her complaint pursuant to the MTCA against the City and Officer Morton in 1999. She claimed that Officer Morton acted in reckless disregard for the safety of Presley during the collision. In August 2004, a bench trial ensued on the matter, and Circuit Judge Tomie Green entered a default judgment against the City and Officer Morton on the issue of liability, after she had ruled that the defendants’ answers to an amended complaint were untimely filed. The trial judge awarded Presley $219,763.63 in damages. The City appealed, and the Mississippi Supreme Court found that the trial judge “abused her discretion and committed reversible error in sua sponte entering a default judgment as to liability on the day of trial.”
 
 See City of Jackson v. Presley,
 
 942 So.2d 777, 779(¶1) (Miss.2006). The supreme court reversed the trial judge’s final judgment and remanded the case to the circuit court for a new trial.
 
 Id.
 

 ¶ 9. In July 2007, a second bench trial ensued before a different trial judge, Circuit Judge Swan Yerger. On December 19, 2007, the trial court entered judgment in favor of Presley and against the City in the amount of $148,763.63; Officer Morton was not found personally liable. The trial judge incorporated verbatim Presley’s proposed findings of fact and conclusions of law into his final judgment. From this judgment, the City timely appeals, raising three issues: (1) whether the trial court erred in adopting Presley’s proposed findings of fact and conclusions of law verbatim; (2) whether the trial court erred in finding reckless disregard against the overwhelming weight of the evidence; and (3) whether the trial court erred in failing to find contributory negligence on the part of Presley.
 

 ANALYSIS OF THE ISSUES
 

 1. Verbatim Adoption of the Proposed Findings of Fact and Conclusions of Law
 

 ¶ 10. As this Court’s standard of review relates to the above issue, we will discuss the two issues together.
 

 
 *582
 
 ¶ 11. First, we must determine if it was error for the trial court to adopt Presley’s proposed findings of fact and conclusions of law verbatim, as the City argues. The City claims the trial judge failed to make any “independent and impartial” findings of his own. Upon review of the record, it is undisputable that the trial court adopted the identical findings of fact and conclusions of law submitted by Presley. However, the Mississippi Supreme Court has long held that it is not reversible error and “within the [trial] court’s sound discretion” to adopt the findings of fact and conclusions of law submitted by one party verbatim.
 
 Rice Researchers, Inc. v. Hiter,
 
 512 So.2d 1259, 1266 (Miss.1987). Therefore, we find no error in this regard.
 

 ¶ 12. Second, we must determine the standard of review to be utilized. Generally, this Court applies a de novo standard of review for questions of law, including the proper application of the MTCA.
 
 City of Jackson v. Brister,
 
 838 So.2d 274, 278(¶ 13) (Miss.2003) (citing
 
 Maldonado v. Kelly,
 
 768 So.2d 906, 908(¶ 4) (Miss.2000)). We note that in an MTCA-based claim, the judge sits as the finder of fact.
 
 Miss. Dep’t of Wildlife, Fisheries and Parks v. Brannon,
 
 943 So.2d 53, 56(¶ 9) (Miss.Ct.App.2006) (citing Miss.Code Ann. § 11-46-13(1) (Rev.2002)). Accordingly, “[a] circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence.”
 
 Brister,
 
 838 So.2d at 277-78(¶ 13) (quoting
 
 Maldonado,
 
 768 So.2d at 908(¶ 4)).
 

 ¶ 13. However, the City argues that since the trial judge adopted Presley’s findings verbatim, this Court should apply a heightened scrutiny or a de novo review pursuant to
 
 City of Greenville v. Jones,
 
 925 So.2d 106, 116(¶ 21) (Miss.2006) (citing
 
 City of Belmont v. Miss. State Tax Comm’n,
 
 860 So.2d 289, 293-95 (¶¶ 6-10) (Miss.2003)). Presley counters, however, that while the law is clear that less deference is afforded verbatim findings than “independent” findings, the law is less than clear on the appropriate standard of review. Presley argues this Court should reject a de novo standard for a heightened standard of review, citing
 
 Rice Researchers
 
 and
 
 Brannon.
 

 ¶ 14. We find the City’s reliance on
 
 Jones
 
 and
 
 City of Belmont
 
 for the proposition that this Court extend a de novo review to verbatim findings misplaced. In
 
 Jones,
 
 the supreme court declined to apply a de novo standard, even though it stated that in this situation the reviewing court could “apply a heightened scrutiny
 
 or de novo review.” Jones,
 
 925 So.2d at 116(¶ 21) (citing
 
 City of Belmont,
 
 860 So.2d at 293-95 (¶¶ 6-10)) (emphasis added). Moreover,
 
 City of Belmont
 
 applied a de novo standard of review because the issue on appeal was a legal question — a motion to dismiss.
 
 See City of Belmont,
 
 860 So.2d at 295(¶ 10). Accordingly, we do not find
 
 City of Belmont
 
 controlling.
 

 ¶ 15. Rather, we find Presley’s citation of
 
 Rice Researchers
 
 and
 
 Brannon
 
 appropriate regarding the standard of review. In
 
 Brannon,
 
 this Court discussed the confusion in case law regarding whether to extend de novo review to verbatim findings prepared by one party.
 
 Brannon,
 
 943 So.2d at 57-59 (¶¶ 12-16). This Court ultimately rejected that a de novo standard of review applies; instead, this Court pointed to the holding of the supreme court in
 
 Rice Researchers,
 
 which gave a detailed discussion of its rationale on the applicable standard of review in this situation.
 
 Rice Researchers
 
 held that when a trial judge adopts verbatim the submitted findings by the prevailing party, “the appellate court
 
 *583
 
 must view the challenged findings of fact and the appellate record as a whole with a more critical eye to ensure that the trial court has adequately performed its judicial function.”
 
 Rice Researchers, Inc.,
 
 512 So.2d at 1265 (citing
 
 Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation,
 
 616 F.2d 464, 467 (10th Cir.1980)). The
 
 Rice Researchers
 
 court expressly declined to review the record de novo, because the reviewing court should not be required to discount the findings of the trial judge, who sits “in a bench trial as the trier of fact, [and] has sole authority for determining credibility of the witnesses.”
 
 Id.
 
 (citing
 
 Hall v. State ex rel. Waller,
 
 247 Miss. 896, 903, 157 So.2d 781, 784 (1963)). Therefore, when the trial judge adopts verbatim one party’s findings of fact and conclusions of law, his “determination is entitled to deference, though sensibly not as much as in the ordinary case,” and a “heightened scrutiny” applies.
 
 Id.; see Brannon,
 
 943 So.2d at 59(¶ 16) (quoting
 
 In re Estate of Grubbs; Jacks v. Woods,
 
 753 So.2d 1043, 1046-47(¶ 8) (Miss.2000));
 
 Balms v. Gaines,
 
 958 So.2d 213, 218(¶8) (Miss.Ct.App.2005). We find this heightened level of scrutiny appropriate for the instant case.
 

 2. Reckless Disregard
 

 ¶ 16. The MTCA provides the exclusive civil remedy against a governmental entity or its employees for torts. Miss Code Ann. § 11-46-7(1) (Rev.2002). No governmental employees “shall be held personally liable for acts or omissions occurring within the course and scope of the employee’s duties.” Miss.Code Ann. § 11-46-7(2) (Rev.2002). In the instant case, it is undisputed that Officer Morton was acting in the course and scope of her duties; accordingly, she cannot be personally liable for the injuries to Presley. The MTCA further provides that a governmental entity is not liable for any claims: “[a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection
 
 unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury
 
 [.] ” Miss.Code Ann. § 11—46—9(l)(c) (Rev.2002) (emphasis added). Therefore, the City is liable for Officer Morton’s acts under section 11^6-9 only if Officer Morton acted in reckless disregard for the safety of Presley.
 

 ¶ 17. The standard of “reckless disregard” has been addressed by the supreme court on numerous occasions. It is a higher standard than gross negligence and “embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.”
 
 City of Jackson v. Lipsey,
 
 834 So.2d 687, 692(¶ 16) (Miss.2003) (quoting
 
 Turner v. City of Ruleville,
 
 735 So.2d 226, 229-30 (¶¶ 17, 19) (Miss.1999)). Usually, it “is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.”
 
 Maye v. Pearl River County,
 
 758 So.2d 391, 394(¶ 19) (Miss.1999) (quoting
 
 Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.,
 
 922 F.2d 220, 224 n. 3 (5th Cir.1991)). Reckless disregard will be found when the “conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved.”
 
 Miss. Dep’t of Pub. Safety v. Durn,
 
 861 So.2d 990, 995(¶ 13) (Miss.2003) (quoting
 
 Maldonado,
 
 768 So .2d at 910-11(¶ 11)).
 

 ¶ 18. The City argues that Officer Morton’s actions were merely negligent rather than reckless under the MTCA; therefore, the City is immune from liability. The City asserts that the overwhelm
 
 *584
 
 ing weight of the evidence showed Officer Morton attempted to cross the “five-points” intersection in a cautious, safe manner, and Presley hit her. The City acknowledges that Officer Morton was aware the intersection was dangerous and the traffic was heavy at the time of the accident. However, it maintains Officer Morton exercised due care and obeyed the traffic laws and the general orders of the JPD when proceeding to her call.
 

 f 19. After a thorough review of the record, we agree with the trial court that Officer Morton fully appreciated the risk of entering the dangerous intersection during extremely heavy rush-hour traffic and proceeded anyway across three lanes of traffic against the signal light with an obstructed view. Officer Morton agreed that it would be “unsafe,” “extremely dangerous,” and “ill-advised” to pull in front of the third lane of traffic on Woodrow Wilson Avenue with an obstructed view. She also knew this intersection was notoriously dangerous in general and had a history of injuries and fatalities. Further, Officer Morton could have chosen a different route to answer her call other than traversing an already dangerous intersection against the traffic light at rush hour. It is undisputed that both Presley and Officer Morton had obstructed views because of the bobtail truck, and Presley had the right-of-way because of the traffic light. While Officer Morton stated she had her lights and sirens on and was utilizing her buzzer to cross the intersection, Presley could not have had the opportunity to see the police cruiser and thereby avoid the collision because of the bobtail truck blocking her view. Further, Presley testified she had her windows rolled up and her radio on; so she could not hear the siren or buzzer.
 

 ¶ 20. Additionally, the trial court found the call was not a “priority one” call as identified in the JPD’s general orders, but a call for assistance; meaning the call was not immediate in nature and did not require Officer Morton to utilize her police cruiser’s blue lights and sirens. However, Officer Morton asserts that regardless of whether, under JPD’s general orders on response priorities, it was a “priority one” call (life or death situation — standard response is emergency lights and sirens, or if circumstances warrant, the officer may “run the call” in silent) or a “priority two” call (in-progress crimes or threat to human welfare — standard response is silent and obeying all traffic laws unless utilizing emergency lights and sirens, which is officer’s prerogative), it was at her discretion to activate her blue lights and siren and obey all traffic laws. While Officer Morton denied that she had violated a general order requiring her to notify the dispatcher when she has activated her blue lights and sirens, she admitted she did not notify the dispatcher about this. Officer Morton also admitted that she knew another officer had been dispatched to the call, and an ambulance was on the way to the scene.
 

 ¶ 21. Sergeant Russell stated that Officer Morton’s response to the call was inappropriate and inconsistent with the JPD’s general response orders. After investigating the accident, he stated that while Officer Morton was responding to a call for assistance, it was not immediate in nature and did not require her to utilize her blue lights or sirens either initially or en route. Nor did it require her to proceed through a busy intersection against the red signal light, even if she was merely “inching her nose” out into the third lane in order to see around the bobtail truck at a slow rate of speed.
 

 ¶ 22. The City cites three cases which it claims are factually and legally applicable to the case at bar and where governmental immunity was found: Maldonado,
 
 Kelley v. Grenada County,
 
 859 So.2d 1049 (Miss.
 
 *585
 
 Ct.App.2003), and
 
 Reynolds v. County of Wilkinson,
 
 936 So.2d 395 (Miss.Ct.App.2006). In
 
 Maldonado,
 
 a deputy driving a police vehicle and obeying all traffic laws, crossed a known-to-be-dangerous intersection even though a water tower was partially blocking his view, when he hit another vehicle. The court deemed that the officer’s actions may have been negligent but did not rise to the level of reckless disregard, because the officer did not have an indifference to the risk of his conduct.
 
 Maldonado,
 
 768 So.2d at 911(¶ 12).
 

 ¶ 23. In
 
 Kelley,
 
 the plaintiff was pulling out of a gas station into which a pickup truck was beginning to turn.
 
 Kelley,
 
 859 So.2d at 1051(¶ 3). At the same time, a deputy sheriff, responding to a call for assistance, was moving in the same direction behind the turning truck.
 
 Id.
 
 at 1051(¶ 2). In order to avoid the slowing truck in his lane, the deputy sheriff crossed over the center double lines of the highway to steer around it and collided with the plaintiff, who was turning onto the highway.
 
 Id.
 
 at 1051(¶4). The supreme court found since the deputy was not speeding and was purposefully not using his lights or siren so as not cause an accident from vehicles coming to an abrupt stop, his conduct was merely negligent. He did not exhibit a “wilful or wanton disregard for the safety of others” because his conduct did not show a willingness that harm should follow.
 
 Id.
 
 at 1054(¶ 18).
 

 ¶ 24. Finally, in
 
 Reynolds,
 
 a deputy sheriff hit the plaintiff at a stop-sign intersection in a small town.
 
 Reynolds,
 
 936 So.2d at 396(¶ 2). The deputy sheriff paused at the stop sign, but his view to the left was blocked by a truck that was legally parked on the street. As the deputy began to turn right, edging forward to obtain a better view around the truck, the plaintiff struck him.
 
 Id.
 
 This Court concluded that the deputy’s actions were “at worse a negligent failure to anticipate.”
 
 Id.
 
 at 398(¶ 13).
 

 ¶ 25.
 
 Maldonado, Kelley,
 
 and
 
 Reynolds
 
 are all readily distinguishable from the instant case. None of these cases involve an intersection as complex or dangerous as “five-points,” which has been deemed a “high-risk” intersection by the JPD where numerous traffic fatalities have occurred, and the officers did not enter an obstructed lane of traffic, against the light, at rush hour. Additionally, in this case, Officer Morton was disobeying general orders by proceeding in an emergency manner to a call that was ultimately not deemed immediate in nature. Further, in
 
 Maldonado,
 
 even though the intersection was known as dangerous, there was no indication the officer was acting with deliberate disregard to that danger: the officer took adequate precautions to avoid the accident.
 
 Maldonado,
 
 768 So.2d at 911(¶ 12).
 

 ¶ 26. In
 
 Reynolds,
 
 the deputy came upon a situation which was already dangerous; he did not create the dangerous situation, as here. The deputy in
 
 Reynolds
 
 turned right at the intersection and hit the plaintiff even though his view was blocked, but he had no choice in the matter but to enter the obstructed intersection to make a right turn, unlike Officer Morton, who had a choice on whether to proceed through the intersection when her view was obstructed, wait for her signal light to turn green, or take an alternate route.
 

 ¶ 27. In
 
 Kelley,
 
 the only case cited by the City where the officer was responding to a call for assistance, the officer did cross the double yellow highway line to pass the slow-moving truck, but the officer was not speeding or driving recklessly.
 
 Kelley,
 
 859 So.2d at 1051 (¶¶ 2, 4). The officer’s view was only partially obstructed, unlike here.
 
 Kelley
 
 is further distinguishable in that the collision took place in a small town, where the officer was turning from a
 
 *586
 
 parking lot onto a rural highway.
 
 Id.
 
 The level of traffic between
 
 Kelley
 
 and this case does not compare; the probability of an accident in a rural area is much lower than the probability of an accident at “five-points” intersection during rush hour.
 

 ¶ 28. We agree with Presley that
 
 Maye
 
 is most analogous to the case before us. In
 
 Maye,
 
 an officer was backing his vehicle up an incline — an entrance to a parking lot — when he collided with the plaintiffs car which had turned off the road onto the incline.
 
 Maye,
 
 758 So.2d at 392 (¶¶ 2-3). The officer admitted he could not see the road from the parking lot. Id. at 392(¶ 3). The supreme court held that the officer backed up an entrance with “conscious indifference to the consequences” because he could not be sure the area was clear. Id. at 395 (¶¶ 21-22). Accordingly, the supreme court held that the officer’s actions arose above simple negligence to reckless disregard for the safety of others. Id. at 395(¶22).
 

 ¶ 29. Additionally, as Presley notes, there were numerous inconsistencies between Officer Morton’s testimony earlier in the investigation and at trial regarding numerous aspects of the collision, such as whether she actually saw Presley before the collision, and whether Presley veered to the right before the collision and hit the police cruiser rather than Officer Morton’s entering her lane. Also, Officer Morton’s version of how the accident happened contradicts the physical evidence of the damage to the vehicles. We are mindful that the trial court was in the best position to determine the credibility of the witnesses. See
 
 Durn,
 
 861 So.2d at 996(¶ 18). The trial court resolved these inconsistencies in favor of Presley, and we cannot say it erred in this regard.
 

 ¶ 30. The supreme court characterizes suits where no immunity is found as showing that the law enforcement officer has an appreciation of the risk of injury but at the same time an intentional disregard for this risk.
 
 Maldonado,
 
 768 So.2d at 910-11(¶ 11). That is the situation in the instant case. We find there was substantial, credible evidence to support a finding of reckless disregard for public safety on the part of Officer Morton. Officer Morton knew there was a good chance that traffic would be coming through the green light of the busy intersection, and she proceeded against her own red light, even though her view to the left was completely blocked by the bobtail truck. Therefore, the trial court did not err in finding Officer Morton’s conduct went beyond mere negligence to reckless disregard, and the City is not immune from liability under the MTCA.
 

 3. Contributory Negligence
 

 ¶ 31. The City argues that, in the alternative, the trial court failed to make a finding of contributory negligence on the part of Presley, and we should remand the case for an apportionment of fault. The City contends that Presley is contribu-torily negligent under two statutes: for not yielding “the right-of-way to other vehicles which have entered the intersection ... so closely ... as to constitute an immediate hazard” and not decreasing her speed when approaching an intersection or when a special hazard exists, pursuant to Mississippi Code Annotated sections 63-3-805 (Rev.2004) and 63-3-505 (Rev.2004), respectively. Since Presley did not notice Officer Morton proceeding through the intersection and the intersection was known as a special hazard because it is so dangerous, the City contends Presley should have avoided the accident.
 

 ¶ 32. We find there is no evidentiary basis in the record to support a finding of contributory negligence on the part of Presley. Her view was blocked by the
 
 *587
 
 bobtail truck; therefore, she could not see Officer Morton’s approach. Presley had a green light at the intersection. She was not speeding or violating any other rule of the road. Neither vehicle had an opportunity to avoid the collision once Officer Morton chose to enter Presley’s lane. Accordingly, the trial court was correct in finding no contributory negligence on the part of Presley.
 

 CONCLUSION
 

 ¶ 33. The trial court did not err in adopting verbatim Presley’s proposed findings of fact and conclusions of law; doing so merely subjected the record to heightened scrutiny by this Court. Nor did the trial court err in finding that Officer Morton evidenced reckless disregard for the safety of others under the MTCA, thereby waiving the City’s immunity from liability. Finally, there was no evidence to prove Presley was contributorily negligent. Therefore, we affirm the trial court’s judgment.
 

 ¶ 34. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . "Five-points” intersection, is an undisputedly busy, complicated, and dangerous intersection in central Jackson where five major city streets meet, and numerous signal lights control traffic (low.
 

 [2]
 

 . Testimony explained that Georgetown is a predominately African American neighborhood and that it would be unusual for a Caucasian individual to be there. Further testimony established that the area is notorious for its criminal activity.
 

 [3]
 

 . Testimony described it as a "bobtail” truck — about half the size of an eighteen-wheeler truck.
 

 [4]
 

 . Presley had been in another vehicular accident a few weeks before May 20, but it was not nearly as serious. Dr. Danielson attributed Presley’s neck problems to the May 20 accident.